Parker, C. J.
The title of the demandants being under a deed from him who was the acknowledged owner of "the land demanded in the writ, before the delivery of that deed ; and the title set up by the tenants, under the levy of their execution, having been acquired long after the execution and delivery of that deed ; it is plain that the demandants must recover, unless the conveyance to their father can be impeached and shown to be void.
This conveyance is attempted to be impeached on the ground of fraud, a defect of which the tenants have a right to avail themselves, they having been creditors of Holden, the grantor, long before the conveyance was made.
The circumstances relied upon, to show fraud in the conveyance, are, the execution and registry of the deed by Holden, without the knowledge of Harrison, the grantee ; the purposes and views, which induced Holden to make the conveyance ; the disparity between the supposed value of the estate and the consideration paid for it; and the trust between the parties, that, although the conveyance was in form absolute and unconditional, it should be considered between them as a mortgage or security only, for the debts due to the house of Harrison 8f Wilby, and for the engagements they had entered into in behalf of Holden.
*It is very certain that, until the deed was accepted [*461] by Harrison, the title to the estate had not passed out of Holden, and that his creditors might have arrested the transaction by causing the estate to be attached. For no man can make another his grantee without his consent ; and a deed made to a man with all requisite formalities, and even entered in the public registry, would be null, if not afterwards accepted by the grantee. But if the grantee afterwards assent to the conveyance, it will be good to pass the title to him ; unless some other circumstances shall be shown to render it invalid.
The deed in question bears date the 21st of February, 1810, and was received at the registry on the 26th of the same month. In a month afterwards it was made known to Harrison, who then received it from the registry by direction of the grantor. This completed the transfer between the parties ; so that the grantor and his heirs could no longer claim title to the land, but by virtue of the instrument executed by Harrison and delivered to Holden on the day the transfer was thus completed. The date of the deed is immaterial, its effect commencing from the delivery only ; especially in the present case, there being no acceptance of the conveyance on the part of Harrison, before he received the deed from the registry.
But it was said, that, however effectual between the parties, the *404 deed is void against creditors ; because it was made with a view to defeat and delay them ; and that, as well by the common law as by the statute of 13 Eliz. c. 5, a conveyance under such circumstances is void. And, first, it is said, that from the report it appears that such was the intention of Holden; because he was largely in debt, and his express object was to prevent the levy of divers executions upon his lands ; and that these views and purposes, together with that of securing Harrison &r Wilby, were his inducements to make the conveyance ; and that Harrison was privy to them.
The lands conveyed being supposed at the time greatly to exceed in value the actual or probable demands of Harrison, [*462] *if it appeared that he took an absolute conveyance, with a secret trust to hold the overplus for the use of Holden, with intention to prevent his creditors from resorting to the land for security, the conveyance would undoubtedly have been void. But, although such may have been the intention of Holden, the report does not present conclusive evidence that Harrison participated in the design, and fraud is not to be presumed by a court of law. On being informed'of the circumstances and fears of Holden, Harrison bad motive enough to accept the conveyance, without supposing him to be influenced by a desire to prejudice other creditors ; and his willingness to execute an instrument supposed by the parties to amount to a defeasance, and thus to convert his unconditional conveyance into a mortgage, would seem to negative any suspicion that he meant to be the fraudulent trustee of Holden.
But it is said that, notwithstanding the deed is absolute in its terms, there was a contract between the parties at the time of its delivery, the intended effect of which was to make it a mere pledge; and that it was so contrived as to give it that effect for the benefit of Holden, but not of his creditors.
This arguipent seems to be founded on the supposition that, if the conveyance had been by mortgage directly, or by bond of defeasance, which is virtually a mortgage, it could not be impeached. Now, if the parties really intended a mortgage, but failed of giving the transaction that character from ignorance of conveyancing ; although the deed might from this circumstance have been considered by a jury as fraudulent, and so avoided by a creditor, because it contained evidence of a contract different from what was really intended by the parties ; yet fraud would not necessarily be inferred from such a fact.
But we think the instrument executed by Harrison was in truth what it was intended to be, namely, a legal defeasance of the deed on the performance of the conditions mentioned m it. The [*463] only objection to viewing it in this ■ light is, that * it was not executed at the same time with the deed. It is true, *405 that it bears date of a different day, and that it was not executed until a month after the deed was signed and sealed by Holden. But we do not hold it to be necessary that the dates of the two instruments should be alike, in order to make the bond a defeasance. It is to be executed at the same time, that it may be a part of the same transaction, and so operate to defeat the conveyance as effectually as if it had been made a condition of the deed. This bond was made and delivered at the same time that the deed was delivered;† so that the instant Harrison became seized, Holden held the instrument by which he might afterwards defeat the seizin, and revest it in himself. This was, to all useful purposes, executing the two instruments at the same time ; for the delivery is the effectual execution of the bargain between the parties.
It is held, that so insignificant is the mere date of a deed, that the delivery may be averred and proved to be either before or after the date ; and that, if an absurd or impossible date, or no date at all be found, the grantee may prove the time of execution, if important to be proved, by witnesses. Now, if a deed were dated a month before its delivery, and the grantee was to execute a defeasance according to his bargain, it would seem absurd to require that the bond should be dated back, in order to produce a formal correspondence with the deed. All that is necessary, to make a bond with condition to reconvey a defeasance, is, that it shall appear to be one and the same transaction with the deed, part, indeed, of the same conveyance. And this purpose is fully answered, if, when the deed is delivered, the bond is also made and delivered ; although the former may be of a much older date than the latter.
If the deed in this case had been delivered at the time it bears date, a seizin would have immediately vested in Harrison ; and then his bond to Holden, executed a month afterwards, would be considered a new contract, personal in its nature, not affecting the title to the land, but giving a personal action for damages for any breach of its provisions. * We think this bond was, in [ *464] the sense of the law, executed at the same time with the conveyance, and so was a defeasance ; the two instruments operating, by our statute, like a mortgage, and in no other way.‡
If this be a correct view of the transaction, there seems to be no ground to impute fraud to Harrison, whatever fraudulent intentions Holden may have discovered. For he was a creditor, and was also-liable to pay large sums of money. He had a right to secure himself by a conveyance in mortgage of real estate to any amount ; and the other creditors of Holden might have attached the right in equity *406 to redeem, and might eventually have disencumbered the estate by paying only the debt of Harrison, and indemnifying him.
But it is said, that this bond of defeasance was a mere private security in the hands of Holden, and that his creditors, seeing an absolute deed on record, would have no means of knowing that the conveyance was conditional.
If this creates a difficulty, it is the fault of the law, and not of Harrison. He was not obliged to put the defeasance on record. Indeed, the record of such an instrument is required for no other purpose than to secure purchasers under a grantee, who holds by an absolute conveyance, against secret defeasances. The non-registry of a defeasance operates to make the estate, which was really between the parties conditional, absolute against every body but the original parties and their heirs. Holden might have kept his defeasance secret for a time, with a view to prevent his creditors from levying upon the estate ; but, unless Harrison colluded with him for this purpose, and agreed that the defeasance should not be put upon record, the fraud, if any, was Holden’s, and not Harrison’s.
A court of chancery, if we had such a necessary tribunal, would have obliged the parties to disclose the true nature of the transaction, and would have carried into effect the real intention of the parties, for the benefit of creditors. For want of such a tribunal, difficulties in cases like the present may exist; which, perhaps, cannot be removed by a court of law ; and yet it would seem, that, had a cred-[*465 ] itor * taken pains to ascertain from Harrison himself, or from the witnesses to the transaction, the true character of it while it remained in this shape, the equity of redemption might have been proved and sold, notwithstanding Holden might have been unwilling to produce the defeasance. Or, perhaps, if such creditor had levied upon the land itself, in an action with Harrison upon the title, proving the value of the property conveyed, the amount of the consideration, and other circumstances stated in the report, he might have compelled Harrison to show that he took only a conditional conveyance,'in fact, or submit to the loss of his security.
Considering this,'then, as a security by mortgage honestly obtained by Harrison, the question remains, whether the subsequent transactions, in November, 1811, divested him of his title, and restored the estate to Holden, subject to be taken by his creditors.
At that time it was agreed, between Harrison and Holden, that the defeasance should be given up, and the estates appraised ; and that Harrison should convey to Holden all beyond what he was entitled to hold according to the valuation, and that he should hold the rest unconditionally. This bargain was carried into effect, so far that the defeasance was cancelled and given up, and that Harrison entered into possession of the estates. No fact appears, from which an under *407 valuation can be inferred, or any intention in Harrison to retain more land than would completely indemnify him.
Now it has not been shown, that land held in mortgage cannot be discharged of the condition, so that the mortgagee shall hold absolute ly under his mortgage, instead of taking a new deed from the mortgagor. On the contrary, there can be no doubt, if the mortgagor should release, by a deed, all right and title to redeem, such release would make the mortgagee absolute owner. Nor can we see any reason, if the mortgage is by absolute deed and defeasance, why the-mortgagor may not surrender his bond, and thus give an unconditional, estate to the mortgagee, who is already seized, although of a defeasible estate. The only question in such * case [*466] would be, whether the transaction was bond fide and free from fraud ; and there is no pretence for supposing fraud, where the-mortgaged estate is not of more value than the debt for which it was.a pledge.
With respect to the amount of $700 in land, said to be holden by. Harrison over and above the sums of money due from Holden to Harrison & Wilby, according to their last agreement, it is sufficient for the purpose of this action to say, that it does not appear by the report that there is such an excess ; it being only stated that Holden claims to that amount as due according to the agreement, and that this is denied by the other party. But if this should turn out to be the fact, it ought not to overthrow the whole transaction. For Holden undoubtedly has a remedy upon his agreement; and perhaps Harrison, in his lifetime, might have been charged as the trustee of Holden to this amount.†
Upon the whole, we see no cause for setting aside the verdict, and are of opinion that judgment should be rendered upon it.

Judgment according to the verdict.

 It was not a bond.

 According to the report, this instrument was not under seal, and, therefore, ao cording to formel decisions, could not operate as a defeasance.

 What ground could there be for charging him in a process of foreign attachment when the agreement was not to pay money or to deliver personal chattels, but to convey lands, &c., when this agreement had not been broken ? Gore et al. vs. Clisby and Trustees, 8 Pick. 555.