Pitkin<br>*v.*<br>Thompson.

---

## CHESTER POWERS *versus* PETER RUSSELL.

Where the evidence in a suit in chancery was reported by an auditor, and the parties agreed that such was the evidence applicable to the case, and submitted the same to the Court, subject to any exception in regard to its competency, the mode in which the case was presented to the consideration of the Court was deemed to be unobjectionable.

Upon a bill in equity to redeem, brought by one claiming to be a subsequent mortgagee, the defendant cannot give in evidence as a substantive ground of defence, that the mortgage to the plaintiff was fraudulent as against creditors of the mortgager.

Where, however, the defence was, that the deed of mortgage to the plaintiff had never been delivered, which was a question involving the consideration of intention as well as of acts, such evidence was held to be competent and relevant in regard to the intention with which certain acts were done.

Where a registered deed purporting to have been delivered, has been lost, the presumption is that it was delivered to the grantee; but the presumption which would arise from the loss is rebutted, if the original deed is produced, and is then in the custody of the grantor; and if it appears that neither the grantee, nor any person in his behalf, was present, at the time of the attestation, the presumption of delivery arising from the certificate thereof in the deed, is also rebutted.

Where the proof on both sides applies to one and the same issue or proposition of fact, the party whose case requires the establishment of such fact, has all along the burden of proof, although the weight in either scale may at times preponderate. But where he gives *primâ facie* evidence of such fact, and the adverse party, instead of producing proof to negative the same fact, proposes to show another

and distinct proposition which avoids the effect of it, there the burden of proof shifts and rests upon the party proposing to show the latter fact. Certain evidence held insufficient to prove a delivery of a deed.

BILL in equity to redeem. The bill alleges that Nathan Powers, on September 3, 1822, was seised of certain land situate partly in Greenwich, in the county of Hampshire, and partly in Hardwicke, in the county of Worcester, and that cn that day he conveyed the same in mortgage to the defendant; that afterwards, on the same day, the mortgager made a second mortgage of the same land to the plaintiff, upon condition that the mortgager should pay a note given on the same day for 1600 dollars, payable on April 1, 1823, with interest ; by force of all which the plaintiff became seised of the right in equity to redeem ; and that the note for 1600 dollars remains unpaid.

The defendant, in his answer, denies that Nathan Powers made a second mortgage to the plaintiff, as set out in the bill, or ever transferred his right in equity of redeeming the mortgaged premises, either mediately or directly, to the plaintiff; and he states, that he has been informed and believes, that if any deed like that pretended to have been made to the plaintiff was ever written, the same was never duly executed and delivered by Nathan to the plaintiff, or if executed and delivered, that the same was done by conspiracy between Nathan and the plaintiff to hinder, defeat and delay the creditors of Nathan, and therefore was fraudulent and void.

The plaintiff filed a general replication.

An auditor appointed by the Court of Common Pleas to audit the claims of the parties and to state the facts, reported that it was proved, that, in the autumn of 1822, Clark Powers, who was a brother of Nathan and of the plaintiff, took from the office of the register of deeds, for the county of Hampshire, a mortgage deed from Nathan to the plaintiff, answering the description of the deed referred to in the plaintiff's bill, together with the deed of the same land from the defendant to Nathan, and the mortgage of the same from Nathan to the defendant ; that this was done by Clark, because he supposed it would be a favor to the persons

interested, and not because either of them had requested him to do it ; that he carried the deeds to Greenwich and gave them to Nathan, who said he should soon have an opportunity to give or send to the plaintiff his deed. It was also proved, that Clark, who was the administrator of the estate of Nathan, had made diligent search for the deed in question among the papers of Nathan, and that he had never been able to find it, and that he did not know where it now was, nor what became of it after it thus came into the possession of Nathan. The plaintiff then filed his affidavit, that the deed was lost, destroyed or fraudulently concealed. Upon this testimony the plaintiff was allowed to introduce evidence of the execution of the deed, without producing the original, and also to resort to secondary evidence of the contents of the deed.

To prove the execution and delivery of the deed to the plaintiff, Laban Marcy testified, that in September 1822, when the deeds between Nathan Powers and Russell were made, the witness also made a note for 1600 dollars from Nathan to the plaintiff, and a mortgage deed to secure the payment thereof, of the same property which had been previously mortgaged to Russell, and subject to that mortgage ; that the note and deed were made at the request of Nathan.

Clark Powers testified, that since the death of Nathan, which happened in 1824, he has frequently heard the defendant say that the plaintiff had a mortgage upon the lands in question.

A promissory note from Nathan to the plaintiff, for 1600 dollars, dated September 3, 1822, with an indorsement of one year's interest in the handwriting of Nathan, was then produced by the plaintiff, and an office copy of a mortgage deed, which purported to be made to secure the payment of the note.

The defence was stated to rest upon the ground, that the making of the deed from Nathan to the plaintiff was intended to secrete the property of Nathan from his creditors, and was therefore fraudulent and void ; that it was not designed to be delivered, unless it should become necessary, in order to carry into effect the fraudulent intent ; and that there never

was, in fact, any legal delivery of the deed by Nathan to the plaintiff.

The plaintiff objected to the admission of any evidence to show that the deed was made to defraud creditors, because if it were, such creditors only could take advantage of the fraud. The auditor however decided to hear the evidence, and report it, with the objection, to the Court.

The auditor reported, that it was proved on the part of the defendant, among other things, that Nathan Powers was engaged in business in Alabama, and there became insolvent in 1820, and that in about a year from that time he returned to Greenwich, his former place of residence. He was generally reputed to be insolvent in 1822. The auditor reported various dealings between Nathan and the plaintiff, and described certain promissory notes from the plaintiff to Nathan, which were made subsequently to the mortgage to the plaintiff, and which were found among the papers of Nathan. It appeared that Nathan died intestate; that administration was granted on his estate, and a commission of insolvency was issued, but the estate proved solvent.

Mrs. Berry, the daughter of the defendant, and formerly the widow of Nathan Powers, testified that she saw the deed upon which the plaintiff founds his claim, in the hands of her husband Nathan Powers, on the day when it was made ; that it remained in his possession until it was sent by him to the register's office to be recorded ; that she saw it again in his possession in October or November 1822, and it remained in his possession from that time until his death, and that since his death she herself had had constant possession of it ; that two or three weeks after it was made, she heard her husband tell the plaintiff that he had made a mortgage to secure 1600 dollars for him, and had sent it to be recorded, and she did not recollect that the plaintiff made any reply ; that soon after the death of Nathan, the plaintiff stated to her that she could not by law have her dower in the estate, in consequence of a mortgage which he had upon it, and she replied that he knew, that when that mortgage was given, her husband was in debt, and the mortgage was made on that account, that the plaintiff paid nothing for it, that he never saw it, and that i'

had never been in his possession ; that he replied, he cared nothing about that, that the deed was on record, and he could hold it by law, and would do it ; and that she then said to him, that her husband put it upon record and paid for it himself.  She further testified, that the defendant brought home his deed and bond from Marcy's office at the same time that her husband brought his deed and the mortgage to the plaintiff, and that the mortgage note was with the deed at the time, and that she saw it again in her husband's possession several weeks afterwards.

It appeared that the plaintiff was not present at the time of making the mortgage in question, with the other deeds, at Marcy's office.

It was agreed by the parties, that the testimony reported by the auditor should have the same effect as if it had been given upon a commission to take the depositions of the witnesses.

The cause was argued in writing.

*Bates* and *Dewey*, for the plaintiff, cited on the subject of the delivery of deeds, *Wheelwright* v. *Wheelwright*, 2 Mass. R. 447 ; *Hatch* v. *Hatch*, 9 Mass. R. 310 ; *Harrison* v. *Phillips Academy*, 12 Mass. R. 460 ; *Belden* v. *Carter*, 4 Day, 69 ; Shep. Touch. 57 ; Co. Lit. 36, Hargr. note 223.

*L. Strong* and *Forbes, contrà*, cited on the same subject, *Ward* v. *Lewis*, 4 Pick. 518 ; *Maynard* v. *Maynard*, 10 Mass. R. 456 ; *Jackson* v. *Phipps*, 12 Johns. R. 418 ; *Chapel* v. *Bull*, 17 Mass. R. 220.

SHAW C. J. delivered the opinion of the Court. The questions presented in this case arise upon a bill in equity, brought to redeem certain parcels of real estate, lying partly in the county of Hampshire and partly in the county of Worcester.

It is conceded that in 1822, Nathan Powers, the brother of the plaintiff, having received a conveyance of the same estate from Peter Russell the defendant, who was then his wife's father, on the same day duly executed and delivered to the defendant a mortgage deed, conditioned to perform a bond then entered into, to support and maintain the defendant

*Powers*
*v.*
*Russell.*

*April Term*
*1833,*
*at North-*
*ampton*

Powers
v.
Russell.

in the manner therein more particularly specified, during his life.

The claim of the plaintiff is, that the same Nathan Powers, who has since deceased, immediately after making the deed above mentioned, executed another mortgage deed to the plaintiff, in virtue of which he claims a right to redeem.

The execution and delivery of this last mortgage are denied by the defendant, and the points raised and considered have turned wholly upon this question. It is very clear, that to enable the plaintiff to maintain his bill to redeem, he must prove affirmatively, that he stands in the character of a grantee of the premises from the original mortgager, and that in regard to this point the burden of proof is upon the plaintiff.

The mode in which the questions of fact are brought before the Court, is peculiar, but we can perceive no objection to it. The case has been by consent referred to an auditor, who has reported the facts and the evidence, and it is agreed by the parties, that such is the evidence, and all the evidence, applicable to the cause, and that it is submitted to the Court, subject to any exception in regard to its competency, in the same manner as if it had been regularly taken in the cause. The case, therefore, stands upon the same footing as if tried upon concessions or an agreed statement of facts ; and derives its character, not from the fact of its having been reported by an auditor, but from the consent and admissions of the parties.

One point affecting the character of the evidence relied upon, it is proper to consider, as a preliminary question, that namely, whether it was competent for the plaintiff in this cause, and in this stage of the cause, to go into evidence showing that the deed from Nathan Powers to Chester Powers, under which the latter now claims, was made to delay and defeat creditors. So far as that consideration could be relied on as a substantive ground of defence, showing that although the deed was executed and delivered with all the formalities and solemnities requisite to give it effect as a deed, still that it is void, we are of opinion, that the defendant is not in a condition to avail himself of it, being neither a creditor himself, nor standing in such a relation

as to defend in behalf of any creditor or creditors of the grantor. If, therefore, it had appeared to be, as against creditors, a voluntary conveyance, without consideration ; or if, in terms, it had recited a good but not a valuable consideration, and were in all other respects executed and delivered as the grantor's deed, we think that the defendant could not have resisted the plaintiff's right to redeem.

But, inasmuch as the question of delivery involves a consideration both of acts and motives or intentions, in other words, both overt and mental acts, the evidence in question is competent and relevant, as to the intent and motive with which certain acts were done.

The question then recurs, whether upon the evidence there has been a legal delivery of the instrument in question, to give it effect as the deed of the mortgager. It is very clear, that to give effect to a deed, there must be a delivery, actual or constructive, by the party making it, to the grantee, or to some person for his use.

Whether the evidence of the loss of the deed, and of its contents, by the production of a copy from the registry of deeds, would, under the circumstances, have been admissible and sufficient, it is not now necessary to inquire. The affidavit given by the plaintiff to lay the ground for the introduction of that evidence, is not attached to the report ; but it is remarkable, taking the contents of it as stated in the argument, that the plaintiff does not allege that it was delivered. But supposing that the affidavit of the plaintiff was sufficient, and the evidence from the production of an office copy, without further proof, would have been *primâ facie* evidence of execution, it would have resulted from the presumption of law, arising from the common attestation of the witnesses, in their certificate, that it was signed, sealed and *delivered*. It is a well known rule of evidence, that where the production of an original deed is dispensed with and an office copy is competent evidence, the deed must be presumed to have been executed as certified, in presence of the attesting witnesses, and the necessity of calling them is dispensed with. In most cases, an attesting witness could not be expected to remember the fact of attesting a deed,

Powers
*v.*
Russell.

by the mere force of memory, without a recognition of his signature, and, therefore, unless the original can be produced, the attesting witnesses, in general, need not be called.

In the supposed state of the proof, therefore, a delivery would have been presumed from the attestation, and this presumption would not be rebutted from the fact, that the deed was not in the possession of the grantee. The evidence of loss would be presumptive evidence, that it had been in the hands of the grantee, and if it had been so in the hands of the grantee, this would be *primâ facie* evidence of delivery, and in the absence of countervailing proof, would establish the title of the party claiming under it.

But when the original deed was produced, and shown to have been in the custody of the grantor at the time, the presumption of its possession by the grantee arising from its loss was rebutted; and when it appeared that the grantee was not present, and no person in his behalf, at the time of the attestation, the presumption of delivery arising from the certificate, was also rebutted. Then the deed stood as it would have done, if the original deed had been produced in the outset by the plaintiff, he having the burden of proof of an execution and delivery.

It may be useful to say a word upon the subject of the burden of proof. It was stated here, that the plaintiff had made out a *primâ facie* case, and, therefore, the burden of proof was shifted and placed upon the defendant. In a certain sense this is true. Where the party having the burden of proof establishes a *primâ facie* case, and no proof to the contrary is offered, he will prevail. Therefore the other party, if he would avoid the effect of such *primâ facie* case, must produce evidence, of equal or greater weight, to balance and control it, or he will fail. Still the proof upon both sides applies to the affirmative or negative of one and the same issue, or proposition of fact; and the party whose case requires the proof of that fact, has all along the burden of proof. It does not shift, though the weight in either scale may at times preponderate.

But where the party having the burden of proof gives competent and *primâ facie* evidence of a fact, and the adverse party, instead of producing proof which would go to negative the same proposition of fact, proposes to show another and a distinct proposition which avoids the effect of it, there the burden of proof shifts, and rests upon the party proposing to show the latter fact.

To illustrate this ; — *primâ facie* evidence is given of the execution and delivery of a deed ; contrary evidence is given on the other side, tending to negative such fact of delivery, this latter is met by other evidence, and so on through a long inquiry. The burden of proof has not shifted, though the weight of evidence may have shifted frequently ; but it rests on the party who originally took it. But if the adverse party offers proof, not directly to negative the fact of delivery, but to show that the deed was delivered as an *escrow*, this admits the truth of the former proposition, and proposes to obviate the effect of it, by showing another fact, namely, that it was delivered as an escrow. Here the burden of proof is on the latter.

Applying these rules to the present case, it is manifest that the burden of proof was upon the plaintiff through the whole inquiry. The question was, whether the instrument was ever delivered by Nathan Powers to Chester Powers as his deed. This question is to be examined, as if the original deed had been first produced.

It does not appear that the attesting witnesses were called after the original deed was produced, but it does appear that Chester Powers was not present when the deed was executed, and did not know of the fact till afterwards. The certificate of attestation, therefore, is not literally true ; it shows only that the deed was then signed, sealed and acknowledged, not that it was delivered. Besides, it farther appears, that at that time the deed was taken by Nathan Powers the grantor, and was by him sent to the registry. Had it appeared, that when sent to the registry, it had been stated by the grantor that it was so done for the grantee's use, if it had been said that he might call and take it, and he had called for it accordingly, this might have made

7 *

the delivery to the register of deeds for the use of the grantee, a good delivery. *Harrison* v. *Phillips Academy*, 12 Mass. R. 456 ; *Hedge* v. *Drew*, 12 Pick. 141. But the circumstance that the grantor took the custody of the deed after it was returned from the registry, is strong evidence that it was not left with the register for the plaintiff's use.

The custody of the deed by Clark Powers, was not as an agent for the plaintiff. He took it from the registry as an act of courtesy, and delivered it to his brother Nathan. Nathan's declaration that he should soon have an opportunity to send it to his brother the plaintiff, is very slight evidence of his intention to do so, except under limitations, and upon contingencies to suit his own convenience and views ; and the fact that he retained it to the day of his death, is strong evidence that he never in fact executed such an intention, if he then entertained it.

The admission of the defendant, that Chester Powers had a mortgage on the estate, is of no weight. It was sufficient to warrant such a statement, that a deed was on record, purporting to be a mortgage from Nathan to Chester ; but the defendant could know nothing of the validity of such a deed.

The note held by the plaintiff, if that evidence stood alone, would have some weight. But it seems that there were considerable mutual dealings between the parties ; that there were some counter notes ; that although Nathan Powers had failed for a large sum abroad, yet that in these domestic transactions he had a considerable credit ; that his estate was in fact solvent, and, therefore, if the plaintiff's note was valid evidence of a debt, he has had the means of obtaining payment.

On the whole proof, the Court are of opinion, that there is no sufficient evidence of the delivery of the deed by Nathan Powers to Chester Powers.

There is no analogy between the case of the plaintiff's deed and the defendant's, because the deed to the defendant was delivered at the time of execution and before it went to the registry ; and then, when handed by Clark Powers

to Nathan after it was registered, it was quite immaterial to its legal effect, whether it was given over by Nathan to the defendant or not.

*Bill dismissed.*