# SUPREME JUDICIAL COURT

##### FOR THE

## COUNTY OF NORFOLK, OCTOBER TERM 1840, AT DEDHAM.

---

##### PRESENT:

Hon. LEMUEL SHAW, Chief Justice.
Hon. SAMUEL PUTNAM,
Hon. SAMUEL S. WILDE, } Justices.
Hon. CHARLES A. DEWEY,

---

## Samuel Marden *vs.* Samuel H. Babcock & another.

A mortgage of property to secure the debt of another is not a voluntary conveyance, and therefore is not fraudulent *per se* as against the creditors of the mortgagor.

Upon a statement of the facts on which a party relies to prove a conveyance fraudulent, on the ground that it was intended to defraud creditors, the court will not pronounce it fraudulent. Whether it be fraudulent for such cause, is a question to be decided by a jury.

WRIT of entry to recover lands in Dorchester. The parties submitted to the determination of the court the following case : On the 16th of August, 1836, Theodore C. Leeds and Benjamin B. Leeds gave to the demandant a promissory note for a debt of said Theodore, for $2625, payable in six months with interest. On the 10th of April, 1837, the demandant sued out a writ of attachment on said note, and on the same day caused the demanded premises to be attached ; and

such proceedings were afterwards had, that he, at the February term, 1838, of this court, recovered judgment against said Theodore C. and Benjamin B. Leeds, on said note, on which judgment an execution was issued and duly levied upon the demanded premises, within thirty days after said judgment was rendered.

On the 11th of February, 1837, said B. B. Leeds, by a deed, bearing date January 30th, 1837, for the expressed consideration of thirteen thousand dollars, which was about the true value of said estate, made and delivered to Babcock and Read, the tenants, a deed of warranty, in fee simple absolute, of the demanded premises, together with all the other real estate of said Leeds. No consideration moved or passed from the tenants to said B. B. Leeds, upon the execution and delivery of said deed, unless the facts hereinafter stated constitute such consideration.

Said B. B. Leeds, about the time when said deed was delivered, but before the delivery thereof, had indorsed several notes given by his son Joseph Leeds to his (said Joseph's) creditors, and for said Joseph's debts. And the said Babcock and Read, the tenants, on the said 11th day of February, 1837, gave to said B. B. Leeds a bond in the penal sum of $13,000. The recital, which preceded the condition of this bond, mentioned the said deed, and then contained the following words : " Which property we are to hold as collateral security for the payment of certain notes of hand, all of which notes are dated February 1, 1837, are signed by Joseph Leeds, are indorsed by Benjamin B. Leeds, and are payable in twelve months with interest ; and of certain other notes of hand, dated, signed and indorsed the same, and are payable in eighteen months with interest. A particular schedule of said notes being annexed to this instrument, and all of which amount to the sum of $11,969·25. The rents of the property aforesaid we are to receive, and we agree to appropriate the same to pay the interest on the aforesaid notes, and the surplus, if any, we are to appropriate towards paying the principal of said notes."

The condition of said bond was thus : " Now, therefore, it is fully understood and agreed that when the aforesaid notes are paid, then we are to reconvey to the said Benjamin B. Leeds

the property aforesaid (conveyed by him as collateral security) by a good quitclaim deed, with a warrantee free of any incumbrance made by or under us ; to the performance of which we do hereby bind ourselves, our heirs, executors, administrators and assigns, to the said Benjamin B. Lec ls, his heirs, executors, administrators and assigns in penalty as above named. And wher said property is reconveyed in manner aforesaid, then this obligation is to be null and void. Otherwise it is to remain in full force.''

On said bond was this indorsement : '' It is fully understood that the notes herein mentioned, and for which Benjamin B. Leeds conveys his property to us as collateral security that said notes shall· be paid, are notes given to the creditors of Joseph Leeds in part settlement of their demands against him. And the said creditors whose names are here added have agreed to receive said notes together with certain other notes signed, indorsed and dated the same, payable in eight months with interest and secured by other property placed in our hands, in full satisfaction of their several demands. Now, therefore, we do agree that if any creditor or creditors whose names are written below refuse to settle as above stated, then we will forthwith reconvey to Benjamin B. Leeds the property he has conveyed to us.'' A list of said creditors, and the amount of their respective notes, made a part of said indorsement.

Upon the giving of said deed and bond, the creditors of Joseph Leeds agreed to receive one half of the amount of their several debts, as expressed in the indorsement on said bond.

Previously to the execution and delivery of said deed and bond, said Joseph Leeds, in order to remove certain incumbrances, which were by two attachments on the estates conveyed, as above, to said Babcock and Read, and to enable said B. B. Leeds to convey a complete title of said estates to them, paid about sixteen hundred dollars to the creditors of said B. B. Leeds, and thus removed the previously existing incumbrances thereon. The tenants, immediately after the said conveyance to them by said B. B. Leeds, constituted him their agent, by parol, to collect the rents of said real estate ; and he occupied

part thereof. And the tenants are responsible, as by the bond before mentioned, to the creditors of Joseph Leeds, for the amount of said rents and profits received by said Benjamin B. and for the rent of the estate occupied by said Benjamin B. after said conveyance. Said rents amount to about nine hundred dollars yearly, exclusive of the tenement occupied by said Benjamin B

B. B. Leeds took the poor debtors' oath on the 4th of June, 1838, at Dedham, on a claim existing prior to his said deed to the tenants.

If, on these facts, the said deed of conveyance to the tenants is void, as against the demandant, it was agreed that the tenants should be defaulted ; otherwise, that the demandant should become nonsuit.

*Richardson & Cushing,* for the demandant. The conveyance in question was made to secure liabilities assumed by the grantor for Joseph Leeds, after the note was given to the demandant ; and as no consideration passed from the grantees, it was a voluntary conveyance, and void as against him. *Partridge* v. *Gopp,* Amb. 596. *Sexton* v. *Wheaton,* 8 Wheat. 229. Roberts Fraud. Con. 27. 416. 418. The removal of the attachments, by Joseph Leeds, was too small a consideration to avail any thing against the demandant.

The grantor might have suppressed the bond of defeasance, and thus have prevented the creditors of Joseph Leeds from taking any benefit of the conveyance. Or the land might have been attached as the property of the tenants, and thus have been lost to the creditors.

The natural consequence of the grantor's conveyance to the tenants was to defraud his creditors ; and he must be taken to have intended that consequence. The deed was therefore void on this ground. *Hyslop* v. *Clarke,* 14 Johns. 458. *Widgery* v. *Haskell,* 5 Mass. 144. *Austin* v. *Bell,* 20 Johns. 442. *Burd* v. *Smith,* 4 Dall. 76. *Johnson* v. *Whitwell,* 7 Pick. 71. *Twyne's case,* 3 Co. 81.

This case comes within the purview, if not the letter, of *St.* 1836, *c.* 238, § 11, which forbids preferences in assignments.

*Metcalf & Clarke,* for the tenants. The only question on

the facts stated is, whether this conveyance, which was a mortgage, was fraudulent *per se.* It can be so only on the ground that it was voluntary, i. e. without consideration. The court cannot pronounce it fraudulent and void upon any other ground. If the demandant hoped to avoid the conveyance because it was intended to defraud creditors, he should have gone to a jury—that being a question exclusively for them. *Gould* v. *Ward,* 4 Pick.105. *Jackson* v. *Timmerman,* 7 Wend. 436. This was not a voluntary conveyance. *Ex parte Hearn,* 1 Buck's Bankr. Cas. 165. That case is not distinguishable from this. See also *Morgan* v. *Brundrett,* 5 Barn. & Adolph. 297. *Belcher* v. *Prittie,* 10 Bing. 408. *Atkinson* v. *Brindall,* 2 Scott, 369.

The case is not within the *St.* of 1836, *c.* 238. The conveyance was not an assignment in trust. *Bates* v. *Coe,* 10 Connect. 280.

SHAW, C. J.   The demandant in this action claims title to the land demanded, by virtue of a levy of execution thereon as the property of Benjamin B. Leeds, pursuant to an attachment, made April 10th, 1837. The tenants claim title from the same Benjamin B. Leeds, under a deed made prior to the demandant's attachment. This deed the demandant attempts to defeat, on the ground that the said Leeds was at the time much in debt and subsequently proved insolvent; from which he attempts to establish the inference that the deed was made with an intent to defeat and defraud creditors, and so is void as against them.

In the first place, it is obvious from the facts stated, that the deed in question was a mortgage from B. B. Leeds to the tenants. For though the deed and the bond given by them do not bear the same date, yet it is found as a fact, that the bond was executed and delivered to Leeds, at the same time that his deed was delivered to them; and as a deed takes effect from its delivery, the deed and bond took effect at the same time; therefore the bond was strictly a bond of defeasance, and converted the abso lute deed into a mortgage. *Harrison* v. *Trustees of Phillips Academy,* 12 Mass. 456. The bond referred to the deed, and was conditioned to reconvey upon the payment of certain specified sums. It therefore had all the characteristics of a defeasance.

The only question here is, whether the case discloses any thing, which renders this conveyance fraudulent in point of law, against the creditors of Leeds. It has been argued that there was no consideration ; but being under seal and importing a valuable consideration, that is *primâ facie* evidence of consideration sufficient to sustain the conveyance ; and if the demandant relies on the ground, that the consideration was inadequate or pretended, that is matter of fact to go to a jury, upon the question of fraudulent intent.

It was further contended, that it was an assignment in trust for creditors, and so void by *St.* 1836, *c.* 238. But it has none of the qualities of an assignment in trust. It was a mortgage conditioned for the payment of notes, of which the mortgagor was indorser, but for which his son was first liable as promisor. Had these notes been paid by Joseph, by his own means, from other funds placed in the hands of the mortgagees, none of the mortgaged property would go to pay them, and by force of the defeasance the property would revest in the mortgagor.

It was contended that this was a voluntary conveyance, and so was fraudulent *per se* against the creditors of the grantor. But there seems to be a manifest distinction between a voluntary conveyance, or deed of gift, without adequate and valuable consideration, and a mortgage given to secure the debt of another. In the former case, the grantor finally parts with his property, and it is alienated as well from his creditors as from himself. In the latter, it is a pledge only, it may be to a small amount, and the estate of the grantor is not devested. But further; to avoid a conveyance as fraudulent against creditors, the intent to defraud, delay or defeat, must be known and entertained by both parties. In a voluntary absolute conveyance, the fact that no consideration is paid is of course known to both parties. If the grantor was in debt at the time, as such conveyance must necessarily tend to defeat the rights of creditors, and as all persons are presumed to contemplate and intend the natural and probable consequences of their own acts, the conclusion is irresistible, that such conveyance was intended to defeat creditors, and is

therefore fraudulent. But a mortgage to secure the debt of another is not voluntary. *Ex parte Hearn*, 1 Buck's Bankr. Cas. 165.

Most of the considerations, which have been urged upon the court, arise from alleged badges and indications of fraud; such as the relation between the parties; the fact that the mortgagor was in debt, and had signed a note to the demandant, as surety for another son, which was soon to fall due; and that he soon after became insolvent and took the poor debtors' oath. If the demandant relies on considerations of this kind, they go to the *question of fact*, whether this particular conveyance was made with a fraudulent intent; and upon this question, all the facts and circumstances, attending the negotiation and conveyance, are to be submitted to a jury, to decide the question as a question of fact. If the demandant can show sufficient ground to discharge the agreed statement of facts, and be allowed to go to a jury upon this question of fact, the case is open to a motion for that purpose. Otherwise a nonsuit will be entered, and judgment rendered thereon for the tenants.