---
Badger *v.* Story.
---

---

BADGER *v.* STORY & a.

The testimony of a third person who heard certain statements, on which a party to a suit claims to have acted, is admissible evidence, notwithstanding that the person alleged to have made them might have been called as a witness in the case.

The declarations of the grantor at the time the deed was made, the grantee not being present, are admissible evidence, as part of the *res gestœ*, to show the intent and purpose with which he made the deed, in order to show a delivery of it.

But such declarations are not admissible as between the parties to it, to limit the terms of the deed itself, or to show that it was intended to be something different from what it purports to be.

Such declarations by the grantor, that a deed, absolute on the face of it, was in fact intended only as a security, are admissible in evidence in favor of creditors to defeat a conveyance on the ground of fraud.    But it is not sufficient to show that the grantor meditated fraud.    It must also be shown that the grantee participated in the design, or for some other reason can not avail himself of the deed.

An absolute conveyance made for the purpose of securing a debt, with an understanding between the parties that the land is to be re-conveyed upon payment of the debt, is void as against existing creditors.    *Smith* v. *Lowell,* 6 N. H. 67 ;  *Winkley* v. *Hill,* 9 N. H. 31 ;  *Tifft* v. *Walker,* 10 N. H. 150, and *Smith* v. *Smith,* 11 N. H. 145, cited and considered.

Whether an executor or administrator can, in virtue of his representation of the rights of any portion of the creditors of a deceased debtor, avoid entirely an absolute deed, made by the deceased in fact to secure the

Badger *v.* Story.

payment of a debt, but without any actual intention to defraud. *Quære ?*

It seems that where the estate of the deceased is insolvent, he may sell the land, under license, for the benefit of creditors, and leave the purchaser to contest the title of the fraudulent grantee; or perhaps he may himself maintain a bill in equity to remove the fraudulent title, before a sale.

But where existing creditors have lain by and taken no effectual measures to defeat such a conveyance during the debtor's life-time, whether the executor or administrator can defeat the conveyance for their benefit as a distinct class, and whether he can do more than reach the equitable rights which the debtor himself had, *quære ?*

As to the extent to which an assignee in bankruptcy can avoid the fraudulent conveyances of the bankrupt, *quære ?*

The second section of the U. S. bankrupt act of 1841 does not avoid a conveyance made eight years before the passage of that law, though given as a preference to a creditor.

Neither does the third section of that act give any effect to the assignment, which will allow the assignee to avoid entirely a conveyance given as a security, but with regard to which there was no actual fraud.

WRIT OF ENTRY to recover a tract of land in Dunbarton; tried upon the general issue. The plaintiff claimed title under a deed from the assignees of David Tenney, a bankrupt, executed in 1842. The defendants claimed under a deed of warranty from said David Tenney to Warren Story, the defendants' ancestor, dated March 11, 1833.

To invalidate the deed under which the defendants claimed, the plaintiff offered evidence tending to show that Tenney (said Warren Story not being present) procured the deed to be made and recorded, and at the time of executing it declared that the same, though absolute on its face, was made to secure Story against his liability on certain notes of Tenney, which Story had signed as surety, and that Tenney procured a certificate from the registry of deeds to show Story that the deed was executed and recorded.

To the admission of Tenney's declarations under such circumstances, the defendants objected. But the court

admitted them, and the jury returned a verdict for the plaintiff. Whereupon the defendants moved for a new trial.

*Pierce & Fowler*, for the defendants. The only question is whether Tenney's declarations were admissible in evidence. Tenney would have been a competent witness without his discharge in bankruptcy. That discharge certainly makes him competent. In *Coleman* v. *Southwick*, 9 Johns. 49, *Kent*, C. J., says a party must go to the source of testimony, and not prove what a person was heard to say, when the person himself can be produced. See also *Alexander* v. *Mahon*, 11 Johns. 185, where the evidence was offered to prove an agreement by the confessions of a party who was a competent witness.

*Perley & Ainsworth*, for the plaintiff. It was necessary to go through this testimony to show the character of the delivery. *Powers* v. *Russell*, 13 Pick. 69. Where the grantee is not present at the delivery of a deed, he must show what was done to constitute a delivery. But aside from this reason, a party may show that the deed was fraudulent as to creditors; and it appears to have been so in this case.

PARKER, C. J. The position taken by the defendants' counsel that the declaration of Tenney, the grantor, could not be proved by a third person, because Tenney himself might have been called to state what he said, can not be sustained. The authority cited in support of it, *Coleman* v. *Southwick*, 9 Johns. 49, was the opinion of a majority of the court only, *Spencer* and *Yates* justices dissenting upon the point that the evidence of the person who made the statements upon which the defendant claimed to have acted was better than the testimony of a third person who heard him make the statement; and their opinion seems to be fully sustained by later authorities. Greenl.

Ev., sec. 101; Cowen & Hill's Notes to Phil. Ev., part 1, note 169 (Ed. of 1850); *Rice* v. *Bancroft*, 11 Pick. 469, 471. If the objection to the deed to Warren Story, under which the defendants claim, was that it was never delivered, the fact that Tenney procured it to be made when the grantee was not present, and what he said at the time tending to explain the transaction or give a character to it, would seem to be clearly admissible. And so of the evidence that he procured a certificate from the registry instead of delivering the deed. The grantor's declarations might also be given in evidence for other purposes. They could not be offered as part of the *res gestæ* to limit the terms of the deed itself, as between the parties to it and to show that it was to be something different from what it purported to be on the face of it. *Kimball* v. *Morrell*, 4 Greenl. 368. But to show the intention and purpose with which he made such a deed, it would form a part of the transaction. Thus the declarations of the grantor at the time, and even before the execution of the deed, may be given in evidence, if the deed is contested by creditors on the ground of fraud and they have a tendency to show the fraud. We understand from the case that they were offered in this instance for the purpose of showing that the deed was fraudulent, being made absolute when in fact it was intended as a mere security. If it was competent for the plaintiff to defeat this deed on the ground of meditated fraud, he might well put in the declarations of the grantor made at the time, to show his purpose and intention to defraud his creditors, and if in order to show the deed fraudulent to creditors the plaintiff may take the objection that it purported to be an absolute deed, when it was intended as a security, we see no reason to doubt that he may show what the grantor said on that subject when the deed was executed.

But in a case of alleged fraud it is not sufficient to

show that the grantor meditated a fraud, unless it be shown that the grantee participated in the design, or for some other reason can not avail himself of the deed. *Harrison* v. *Phillips Academy*, 12 Mass. 456; *Bridge* v. *Eggleston*, 14 Mass. 250; *Foster* v. *Hall*, 12 Pick. 89; *Johnson* v. *Johnson*, 3 Met. 65.

The question whether the plaintiff, claiming under a sale from the assignee in bankruptcy, may avoid the deed on the ground that it was on its face absolute, but that it was in fact made to indemnify the grantee, is perhaps not necessarily raised for our consideration on the case as presented. But in order to avoid misapprehension we deem it expedient from what appears in this case, to make some remarks upon this point and upon some of the cases standing in our reports.

The principle that an absolute conveyance made for the purpose of securing a debt, with an understanding between the parties that the land is to be reconveyed upon payment of the debt, is void as against existing creditors, was settled in this State in *Smith* v. *Lowell*, 6 N. H. 67, and recognized in *Tifft* v. *Walker*, 10 N. H. 150. We have no disposition to part from it, satisfied that the principle is sound and that its general effect is highly salutary, although there may undoubtedly be cases where the conveyance has taken such a shape without any actual meditated fraud by the grantee. Still there is falsehood on the face of the deed itself, purporting as it does to be an absolute conveyance of the land, when it is in fact only a security. And it is this falsity and the necessary tendency of such falsity to defraud creditors that enables them to avoid the deed. The shape which the conveyance has taken deprives them of the ordinary mode of securing the right of redemption, which by the agreement of the parties is to belong to the grantor, but which is not secured to him in such a way that the creditors can reach it by process of law without avoiding the deed entirely.

Creditors might perhaps reach the equitable right of the grantor if they desired to do so, by proceedings in equity; and it yet remains to be considered whether subsequent creditors have any just right, further than to be permitted to redeem, as their debtor might, by virtue of the payment, unless it has been made in that shape with an actual view to the perpetration of fraud. Subsequent creditors, who may well inquire into the actual situation of the debtor's property before they give credit, have certainly much less claim to have such deed avoided than those whose rights as creditors had their existence before the transaction, and who might therefore be defrauded in despite of due vigilance, if the conveyance were to stand. The principle stated in *Smith* v. *Lowell* " That a conveyance made to defraud creditors is void with respect to those who become creditors after the conveyance," is a well settled principle of law; but it must not be regarded as settled from the connection in which it stands in that case, that the principle is applicable to a case where, prior to the contraction of a debt, the grantor had made an absolute conveyance to secure another debt, unless that conveyance was made under such circumstances as to show an actual intent to defraud creditors. It seems to be well settled, that in order to avoid a conveyance as fraudulent against subsequent creditors, there must be a fraud actually intended, and not one which is found by inference of law from certain facts, which are in their very nature calculated to defeat the existing creditors, and against which the law can not effectually guard them otherwise than by pronouncing the transaction fraudulent.

The case of *Winkley* v. *Hill*, 9 N. H. 31, was the case of a purchase with an agreement to reconvey on payment of the purchase money, and differing from the case of *Smith* v. *Lowell* and *Tifft* v. *Walker*, inasmuch as there was no apparent debt existing against the grantor, while the grantee held his absolute deed, and the conveyance is,

therefore, more nearly what it purports to be. What has been said respecting the rights of subsequent creditors to avoid a conveyance, applies with a full or increased force to conveyances of that description. And perhaps the general doctrine of that case may admit of a qualification as respects existing creditors, if the secret trust be not of a substantial interest, full value being paid. *Smith* v. *Smith,* 11 N.-H. 465. But that discussion belongs with more propriety to another case. [See *Albee* v. *Webster,* Grafton Dec. T. 1844.]

It has not been settled that an executor or administrator of a deceased debtor, in virtue of his representation of the rights of creditors, can entirely avoid an absolute conveyance, made by his testator or intestate to secure the payment of a debt without any actual intention to defraud. He may doubtless, in virtue of his representation of the interests of creditors and of his duty to provide for the payment of debts, do some things in avoidance of the acts of the deceased, which he if living could not do himself. Where a conveyance by the deceased has been made without consideration, for the purpose of defrauding creditors, and the estate is insolvent, the executor or administrator may either sell the land by a license from the judge of probate for the benefit of the creditors, leaving the purchaser to contest the title of the fraudulent grantee, or, perhaps, he may maintain a bill in equity, in virtue of his representation of their interests, to remove the fraudulent title before a sale. But if the conveyance of the deceased has been made in the shape of an absolute deed, with the view and purpose of securing a *bonâ fide* debt, and the existing creditors instead of pursuing the remedy which the law afforded them, have lain by and taken no effectual measures to defeat the conveyance until their debtor has deceased, so that they can no longer pursue the remedy which the law gave them, it remains to be considered whether the executor or administrator,

who acts not in their behalf only but in behalf of subsequent creditors (and may represent the latter class only), and who acts for the heirs also, can so far separate his official action as to provide for the debts of the creditors existing at the time, as a distinct class. Perhaps if the deed is avoided, the subsequent creditors may come in. But the grantor or his heirs can not avoid a fraudulent deed. *Drinkwater* v. *Drinkwater*, 4 Mass. 354; *Clapp* v. *Tirrell*, 20 Pick. 247. Can the heirs have any benefit of an avoidance by an executor? Whether the executor can do more than by equitable proceedings to reach the equitable right which the debtor had to a reconveyance upon payment of the debt, may admit of question. In other words, it is by no means clear that at law the right to avoid entirely an absolute conveyance, which is intended for the security of a *bonâ fide* debt, in the absence of evidence of actual purposed fraud, extends any further than to authorize proceedings by the existing creditors themselves, perfected and made available in the lifetime of their debtor.

Still less is there any inference to be drawn from any of the cases to which we have adverted, that an assignee in bankruptcy may, in virtue of his representation of the rights of creditors, either by sale or any other proceeding, avoid such a conveyance absolutely. His representation also is of all classes of creditors. He, as well as an administrator, may represent subsequent creditors alone, and from the dates it would not be surprising if he did so in this case. Should there by possibility be a surplus it must go to the bankrupt himself. It is apparent that the same considerations may not operate in such a case as would subsist in a legal proceeding by an existing creditor. How far the assignee may avoid conveyances by the bankrupt remains to be settled. The bankrupt himself could not avoid the conveyance, however fraudulent it might have been as to creditors. He might, therefore,

be a bankrupt by reason of the fraudulent conveyance itself. If a conveyance wholly fraudulent as to creditors could be entirely avoided by the assignee, there might not only be sufficient assets to pay all the creditors but a surplus for the benefit of the bankrupt, which would place him by means of his bankruptcy in a better situation in relation to the property conveyed, than he could be without it.

It is very apparent that the conveyance in this case is not avoided by the terms of the act. By the second section of the act of 1841, all future payments, securities, conveyances, &c., in contemplation of bankruptcy and for the purpose of giving a preference or priority, and all other payments, &c., made or given in contemplation of bankruptcy, to any person not a *bonâ fide* creditor or purchaser for a valuable consideration, shall be deemed void and a fraud upon the act, and the assignee may recover the same as part of the assets of the bankrupt; provided that all dealings and transactions by and with the bankrupt, *bonâ fide* entered into more than two months before the petition, shall not be invalidated, if the other party had no notice of a prior act of bankruptcy, or an intention to take the benefit of the act. The conveyance here was some eight years before the passage of the act.

If there was no actual fraud intended, the assignment itself does not seem to operate in any manner to avoid the security. By the third section all the *property* and *rights of property* of the bankrupt shall, by mere operation of law, *ipso facto*, from the time of such decree, be deemed divested out of the bankrupt, and shall be vested in such assignee as from time to time shall be appointed. And the assignee is invested with all the rights, titles, powers, and authorities, to sell, manage, and dispose of, the same, &c., as fully as if the same were vested in or might be exercised by the bankrupt. By these provisions whatever rights the bankrupt could have conveyed to a *bonâ fide*

purchaser may have passed to the assignee. If the conveyance was intended to defraud creditors, and a subsequent creditor from the bankrupt before the bankruptcy could have avoided it, perhaps the assignee may. But, if there was no actual fraud, there seems to be no propriety in permitting the assignee to avoid entirely what the bankrupt could not have avoided.

On the case as it stands there must be

*Judgment for the plaintiff.*