BERKSHIRE MUTUAL FIRE INSURANCE COMPANY *vs.* FRANKLIN STURGIS & another.

In an action of tort, brought by an insurance company, alleging that the defendant, after obtaining insurance from them, conveyed away the insured premises, and, upon a subsequent loss, falsely and fraudulently represented that he still had an interest in the premises, and thereby induced the company to pay him the amount of the loss, the jury were instructed that if the defendant, knowing that he had no title, concealed that fact from the company, and they were thereby induced to pay the money, and would not have paid it had they known the facts, then the money could be recovered back in this action. *Held*, that the defendant was entitled to a new trial.

ACTION OF TORT against Franklin Sturgis and Benjamin F. Bosworth. Trial in the court of common pleas in Berkshire, before *Aiken*, J., to whose rulings the defendants alleged exceptions, which were argued at Lenox at September term 1858, and the substance of which is stated in the opinion.

*H. L. Dawes & M. Wilcox*, for the defendants.

*J. D. Colt*, for the plaintiffs, cited Ellis on Ins. 99, 102 *note*, Hammond on Ins. 89, 138; Angell on Ins. §§ 172, 175, 176, 189; *Homer* v. *Fish*, 1 Pick. 435; *Kidney* v. *Stoddard*, 7 Met. 252.

SHAW, C. J. This is an action of tort. The plaintiffs set forth, in substance, that they issued a policy of insurance to the defendant Franklin Sturgis, insuring his house and barn in Lee, for the term of seven years; that after said insurance, and before the loss aftermentioned, said Franklin Sturgis, by a deed of quitclaim, conveyed and transferred his estate in the house to Josiah Sturgis, by which all his insurable interest in said house ceased; that afterwards he made a mortgage of the estate to William Sturgis, and that the estate, exclusive of the buildings, was not of so great value as the sum thereby insured; that afterwards the house was destroyed by fire; that the defendant Sturgis, by Benjamin F. Bosworth, his attorney, claimed a loss under said policy, and thereupon received the sum of four hundred and fifty dollars, which the plaintiffs in this action seek to recover back, on the ground that they were induced to pay the same through the misrepresentation and fraud of Franklin Sturgis and of Bosworth, acting as his agent, inasmuch as they

retained from the plaintiffs the knowledge of said quitclaim deed and of said mortgage. They insisted that by the quitclaim deed the assured ceased to have any insurable interest, and so sustained no damage by the burning of the house; and also that the mortgage rendered the policy void.

The ground taken by the defendants was, that although a deed to Josiah Sturgis was made, it was never delivered, and so constituted no alienation, and did not divest the assured of his property and insurable interest in the house.

This, if true, would be sufficient to rebut the presumption arising from the registration of the deed. Delivery is essential to the operation of a deed, even though recorded. *Maynard* v. *Maynard*, 10 Mass. 456. If delivered after registration, it will be sufficient; but such delivery must be proved. *Harrison* v. *Phillips Academy*, 12 Mass. 456.

In regard to the mortgage, the defendants insisted that the amount for which the house was mortgaged did not exceed the value of the land without the buildings.

By the fifteenth article of the plaintiffs' by-laws, to which the policy is made subject, it is provided that a mortgage of the land upon which any building insured stands shall not be deemed an alienation, if the amount secured by the mortgage does not exceed the value of the land, exclusive of the buildings; so that if this was true, it would not affect the right of the assured to recover.

It does not appear by the bill of exceptions, that any evidence was offered by the plaintiffs, or by the defendants, on the question whether the quitclaim deed to Josiah had been delivered, or whether the mortgage to William exceeded the value of the land; but perhaps, in this action, this is not very material. For, although this evidence would have been very material, on the question whether the assured were entitled, or not, to recover the loss; and perhaps in an action for money had and received, on the ground that they had paid the money through a mistake of fact, when they were not liable to pay; yet, in considering the nature of the present action, and the instructions given, we are of opinion, that whatever may have been the evidence on these

points, the instructions were erroneous, and the verdict cannot be maintained.

This action is not only, in form, an action of tort; but throughout charges a grossly false representation and wilful fraud, by alleging facts not true, and known to be false, with intent to deceive the plaintiffs, by means whereof the plaintiffs were deceived and induced to pay money which the defendants knew not to be due; and demands damages therefor. Indeed, upon no other ground could there be a pretence for maintaining the action against both defendants. If it were to recover back money paid by mistake, it could not have been brought against both the agent and the principal. If the agent had not accounted for and paid it over to his principal, and it was rightfully demanded back, he might alone be liable. But if the agent had paid it over to his principal, the latter only would be liable. The leading averment is, that, at the time of the destruction of the house by fire, the said Franklin had no interest therein, and sustained no loss thereby; but the defendants falsely represented that said Franklin had suffered damage thereby, and had an interest in said house, which representations were false, and known to be false at that time.

These were the charges put in issue and tried. To maintain the action, it was incumbent on the plaintiffs to prove the fact that such representations were made by both defendants, or by one with the knowledge and authority and in behalf of the other, and then to prove that these representations were false, by showing that the defendant Franklin Sturgis had no interest in the house, and sustained no loss by its being burnt, and thereby wrongfully obtained the payment of the loss not due.

But upon referring to the bill of exceptions, it appears to us that, by the instructions to the jury, the plaintiffs' right to recover was not made to depend either upon proof of such representations, or upon their falsity. The proof offered was, " that Sturgis, by Bosworth, his attorney, claimed of the plaintiffs indemnity for said loss, and thereupon received the sum of four hundred and fifty dollars, which was sought to be recovered back in this action, on the ground that the plaintiffs were

induced to pay the same, through the fraud of said Sturgis and said Bosworth acting as his agent, inasmuch as they retained from the plaintiffs the knowledge of said quitclaim deed, and of said mortgage." The plaintiffs claim that these acts avoided the policy, and that said Sturgis had no insurable interest at the time of the loss; the defendants at the same time claiming that the said quitclaim deed was never delivered, and that the said Sturgis still remained owner of the house, and that the mortgage did not exceed the value of the land without the buildings.

The jury were instructed "that if the defendant [meaning, we suppose, Sturgis, one of the defendants,] knew he had no title to the premises, or if he knew the premises were mortgaged for more than their value, exclusive of buildings, and, having this knowledge, with the intent and design wrongfully to get their money, when he knew he was not legally entitled to it, concealed it from the company, and they were thereby induced to pay the money, and would not have paid it had they known these facts, then the money could be recovered back in this action; and it was not necessary that the company should have been induced to pay the money by any other artifice of the defendant, except the mere suppression of the knowledge aforesaid, if the disclosure of the same would have prevented the payment of the money."

1. We think this instruction was erroneous. In an action putting in issue a wilful and false representation, it was not left to the jury to find, on the evidence, whether or not the assured had lost his insurable interest, at the time of the loss, either by the quitclaim deed or by the mortgage; if he had not, then the representation, if made, was not false, and the action charging such falsity must fail. It is not enough to say that if it was not false, the defendants could not know it to be false. Both facts, the falsity and the plaintiffs' knowledge of it, were put in issue; and must both be proved, directly and not by implication.

2. In a case charging a direct and false express representation, which is traversed and put in issue, it is not competent for a jury to find the defendants guilty, upon the mere forbearance to communicate a fact; and the instruction to that effect was erro-

neous. There are cases, undoubtedly, where a concealment or suppression of the knowledge of facts, when one is bound to communicate them in honesty and good faith, will avoid a policy, and draw after it some of the same consequences as a misrepresentation ; but when it is charged as a ground of action, not merely avoiding a policy, but making it the foundation of a demand for damages, it must be truly stated in the declaration.

The cases cited in the plaintiffs' brief, we think, are all cases of concealment of facts at the time of entering into the contract. Undoubtedly the law requires the utmost frankness and good faith on the part of the assured, in disclosing all facts within his knowledge, material to the risk, to enable the company to decide whether they will enter into the contract, and more especially to fix the rate of premium. Such cases afford no authority for the present.

3. But the test submitted to the jury had a tendency to mislead them. The direction was, if the jury should believe, that if the facts had been disclosed to the plaintiffs they would not have paid the money, then the jury were to find for the plaintiffs. It may be very possible, and even probable, that if the simple facts of the execution of the quitclaim deed, and of the mortgage, had been disclosed to the company, without regard to the legal effect of these acts, upon the contract of insurance, and although the assured honestly believed that neither of the acts would defeat or impair their legal right to recover the loss claimed, the company might have discovered in them a chance for making a legal defence, and, without further inquiry, refused to pay the money, and left the assured to bring suit.

If the effect of this action could be to place the parties in the same state as before the payment, so as to leave the assured to bring their action, and try the question of the original liability of the company to pay the loss, there would be some color of right to replace the money in the hands of the company and let the assured sue. But this is impossible. The company having paid under a claim of right, they can only now recover the money back, or obtain redress in any form of action, by taking upon themselves to prove that the assured, when they made

their claim, had no right to recover a loss upon the policy. This would be necessary, had the company brought an action of assumpsit to recover back the money upon the ground of a mistake of fact; and *a fortiori* is it necessary, in an action expressly averring misrepresentation and fraud, and claiming damages therefor.

We are therefore of opinion that for these reasons the verdict must be set aside and a *New trial granted.*