DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, DEPARTMENT OF LABOR *v.* GREENWICH COLLIERIES ET AL.

No. 93–744. Argued April 25, 1994—Decided June 20, 1994*

*Together with *Director, Office of Workers' Compensation Programs, Department of Labor* v. *Maher Terminals, Inc., et al.,* also on certiorari to the same court (see this Court's Rule 12.2).

O'CONNOR, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and SCALIA, KENNEDY, THOMAS, and GINSBURG, JJ., joined. SOUTER, J., filed a dissenting opinion, in which BLACKMUN and STEVENS, JJ., joined, *post*, p. 281.

*Edward C. DuMont* argued the cause for petitioner in both cases. With him on the briefs were *Solicitor General Days, Deputy Solicitor General Kneedler, Steven J. Mandel,* and *Edward D. Sieger.*

*Mark E. Solomons* argued the cause for respondents in both cases. With him on the brief for respondent Greenwich Collieries were *Laura Metcoff Klaus* and *John J. Bagnato. Joseph T. Stearns* filed a brief for respondent Maher Termi-

nals, Inc. *Philip J. Rooney* filed a brief for respondent Pasqualina Santoro.†

JUSTICE O'CONNOR delivered the opinion of the Court.

In adjudicating benefits claims under the Black Lung Benefits Act (BLBA), 83 Stat. 792, as amended, 30 U. S. C. § 901 *et seq.* (1988 ed. and Supp. IV), and the Longshore and Harbor Workers' Compensation Act (LHWCA), 44 Stat. 1424, as amended, 33 U. S. C. § 901 *et seq.*, the Department of Labor applies what it calls the "true doubt" rule. This rule essentially shifts the burden of persuasion to the party opposing the benefits claim—when the evidence is evenly balanced, the benefits claimant wins. This litigation presents the question whether the rule is consistent with § 7(c) of the Administrative Procedure Act (APA), which states that "[e]xcept as otherwise provided by statute, the proponent of a rule or order has the burden of proof." 5 U. S. C. § 556(d).

I

We review two separate decisions of the Court of Appeals for the Third Circuit. In one, Andrew Ondecko applied for disability benefits under the BLBA after working as a coal miner for 31 years. The Administrative Law Judge (ALJ) determined that Ondecko had pneumoconiosis (or black lung disease), that he was totally disabled by the disease, and that the disease resulted from coal mine employment. In resolving the first two issues, the ALJ relied on the true doubt rule. In resolving the third, she relied on the rebuttable presumption that a miner with pneumoconiosis who worked in the mines for at least 10 years developed the disease be-

†Briefs of *amici curiae* urging affirmance were filed for the American Insurance Association by *William J. Kilberg, Theodore J. Boutrous, Jr., Craig A. Berrington,* and *Bruce C. Wood;* for the National Association of Waterfront Employers et al. by *Charles T. Carroll, Jr., Thomas D. Wilcox,* and *Franklin W. Losey;* and for the National Coal Association by *Harold P. Quinn, Jr.*

cause of his employment. 20 CFR § 718.203(b) (1993). The Department's Benefits Review Board affirmed, concluding that the ALJ had considered all the evidence, had found each side's evidence to be equally probative, and had properly resolved the dispute in Ondecko's favor under the true doubt rule. The Court of Appeals vacated the Board's decision, holding that the true doubt rule is inconsistent with the Department's own regulations under the BLBA, § 718.403, as well as with *Mullins Coal Co. of Va.* v. *Director, Office of Workers' Compensation Programs,* 484 U. S. 135 (1987). 990 F. 2d 730 (1993).

In the other case, Michael Santoro suffered a work-related back and neck injury while employed by respondent Maher Terminals. Within a few months Santoro was diagnosed with nerve cancer, and he died shortly thereafter. His widow filed a claim under the LHWCA alleging that the work injury had rendered her husband disabled and caused his death. After reviewing the evidence for both sides, the ALJ found it equally probative and, relying on the true doubt rule, awarded benefits to the claimant. The Board affirmed, finding no error in the ALJ's analysis or his application of the true doubt rule. The Court of Appeals reversed, holding that the true doubt rule is inconsistent with § 7(c) of the APA. 992 F. 2d 1277 (1993). In so holding, the court expressly disagreed with *Freeman United Coal Mining Co.* v. *Office of Workers' Compensation Programs,* 988 F. 2d 706 (CA7 1993). We granted certiorari to resolve the conflict. 510 U. S. 1068 (1994).

## II

As a threshold matter, we must decide whether § 7(c)'s burden of proof provision applies to adjudications under the LHWCA and the BLBA. Section 7(c) of the APA applies "[e]xcept as otherwise provided by statute," and the Department argues that the statutes at issue here make clear that § 7(c) does not apply. We disagree.

The Department points out that in conducting investigations or hearings pursuant to the LHWCA, the "Board shall not be bound by common law or statutory rules of evidence or by technical or formal rules of procedure, except as provided by this chapter." 33 U. S. C. § 923(a). But the assignment of the burden of proof is a rule of substantive law, *American Dredging Co.* v. *Miller*, 510 U. S. 443, 454 (1994), so it is unclear whether this exception even applies. More importantly, § 923 by its terms applies "except as provided by this chapter," and the chapter provides that § 7(c) does indeed apply to the LHWCA. 33 U. S. C. § 919(d) ("Notwithstanding any other provisions of this chapter, any hearing held under this chapter shall be conducted in accordance with [the APA]"); 5 U. S. C. § 554(c)(2). We do not lightly presume exemptions to the APA, *Brownell* v. *Tom We Shung*, 352 U. S. 180, 185 (1956), and we do not think § 923 by its terms exempts the LHWCA from § 7(c).

The Department's argument under the BLBA fares no better. The BLBA also incorporates the APA (by incorporating parts of the LHWCA), but it does so "except as otherwise provided . . . by regulations of the Secretary." 30 U. S. C. § 932(a). The Department argues that the following BLBA regulation so provides: "In enacting [the BLBA], Congress intended that claimants be given the benefit of all reasonable doubt as to the existence of total or partial disability or death due to pneumoconiosis." 20 CFR § 718.3(c) (1993). But we do not think this regulation can fairly be read as authorizing the true doubt rule and rejecting the APA's burden of proof provision. Not only does the regulation fail to mention the true doubt rule or § 7(c), it does not even mention the concept of burden shifting or burdens of proof. Accordingly—and assuming, *arguendo*, that the Department has the authority to displace § 7(c) through regulation—this ambiguous regulation does not overcome the presumption that these adjudications under the BLBA are subject to § 7(c)'s burden of proof provision.

### III

We turn now to the meaning of "burden of proof" as used in § 7(c). Respondents contend that the Court of Appeals was correct in reading "burden of proof" to include the burden of *persuasion*. The Department disagrees, contending that "burden of proof" imposes only the burden of *production* (*i. e.*, the burden of going forward with evidence). The cases turn on this dispute, for if respondents are correct, the true doubt rule must fall: because the true doubt rule places the burden of persuasion on the party opposing the benefits award, it would violate § 7(c)'s requirement that the burden of persuasion rest with the party seeking the award.

### A

Because the term "burden of proof" is nowhere defined in the APA, our task is to construe it in accord with its ordinary or natural meaning. *Smith* v. *United States*, 508 U. S. 223, 228 (1993). It is easier to state this task than to accomplish it, for the meaning of words may change over time, and many words have several meanings even at a fixed point in time. *Victor* v. *Nebraska*, 511 U. S. 1, 13–14 (1994); see generally Cunningham, Levi, Green, & Kaplan, Plain Meaning and Hard Cases, 103 Yale L. J. 1561 (1994). Here we must seek to ascertain the ordinary meaning of "burden of proof" in 1946, the year the APA was enacted.

For many years the term "burden of proof" was ambiguous because the term was used to describe two distinct concepts. Burden of proof was frequently used to refer to what we now call the burden of persuasion—the notion that if the evidence is evenly balanced, the party that bears the burden of persuasion must lose. But it was also used to refer to what we now call the burden of production—a party's obligation to come forward with evidence to support its claim. See J. Thayer, Evidence at the Common Law 355–384 (1898) (detailing various uses of the term "burden of proof" among 19th-century English and American courts).

The Supreme Judicial Court of Massachusetts was the leading proponent of the view that burden of proof should be limited to burden of persuasion. In what became an oft-cited case, Chief Justice Lemuel Shaw attempted to distinguish the burden of proof from the burden of producing evidence. *Powers* v. *Russell*, 30 Mass. 69 (1833). According to the Massachusetts court, "the party whose case requires the proof of [a] fact, has all along the burden of proof." *Id.*, at 76. Though the burden of proving the fact remains where it started, once the party with this burden establishes a prima facie case, the burden to "produce evidence" shifts. *Ibid.* The only time the burden of proof—as opposed to the burden to produce evidence—might shift is in the case of affirmative defenses. *Id.*, at 77. In the century after *Powers*, the Supreme Judicial Court of Massachusetts continued to carefully distinguish between the burden of proof and the burden of production. See, *e. g.*, *Smith* v. *Hill*, 232 Mass. 188, 122 N. E. 310 (1919).

Despite the efforts of the Massachusetts court, the dual use of the term continued throughout the late 19th and early 20th centuries. See 4 J. Wigmore, Evidence §§ 2486–2487, pp. 3524–3529 (1905); Thayer, *supra*, at 355; 1 B. Elliott & W. Elliott, Law of Evidence § 129, pp. 184–185 (1904); 2 C. Chamberlayne, Modern Law of Evidence § 936, pp. 1096–1098 (1911). The ambiguity confounded the treatise writers, who despaired over the "lamentable ambiguity of phrase and confusion of terminology under which our law has so long suffered." Wigmore, *supra*, at 3521–3522. The writers praised the "clear-thinking" efforts of courts like the Supreme Judicial Court of Massachusetts, Chamberlayne, *supra*, at 1097, n. 3, and agreed that the legal profession should endeavor to clarify one of its most basic terms. According to Thayer, *supra*, at 384–385, "[i]t seems impossible to approve a continuance of the present state of things, under which such different ideas, of great practical importance and of frequent application, are indicated by this single ambigu-

ous expression." See also Chamberlayne, *supra*, at 1098. To remedy this problem, writers suggested that the term "burden of proof" be limited to the concept of burden of persuasion, while some other term—such as "burden of proceeding" or "burden of evidence"—be used to refer to the concept of burden of production. Chamberlayne, *supra*, § 936; Elliott & Elliott, *supra*, at 185, n. 3. Despite the efforts at clarification, however, a dwindling number of courts continued to obscure the distinction. See Annot., 2 A. L. R. 1672 (1919) (noting that some courts still fail to properly distinguish "between the burden of proof and the duty of going forward with the evidence").

This Court tried to eliminate the ambiguity in the term "burden of proof" when it adopted the Massachusetts approach. *Hill* v. *Smith*, 260 U. S. 592 (1923). Justice Holmes wrote for a unanimous Court that "it will not be necessary to repeat the distinction, familiar in Massachusetts since the time of Chief Justice Shaw, *[Powers, supra]*, and elaborated in the opinion below, between the burden of proof and the necessity of producing evidence to meet that already produced. The distinction is now very generally accepted, although often blurred by careless speech." *Id.*, at 594.

In the two decades after *Hill*, our opinions consistently distinguished between burden of proof, which we defined as burden of persuasion, and an alternative concept, which we increasingly referred to as the burden of production or the burden of going forward with the evidence. See, *e. g.*, *Brosnan* v. *Brosnan*, 263 U. S. 345, 349 (1923) (imposition of burden of proof imposes the burden of persuasion, not simply the burden of establishing a prima facie case); *Radio Corp. of America* v. *Radio Engineering Laboratories, Inc.*, 293 U. S. 1, 7–8 (1934) (party who bears the burden of proof "bears a heavy burden of persuasion"); *Commercial Molasses Corp.* v. *New York Tank Barge Corp.*, 314 U. S. 104, 111 (1941) (party with the burden of proof bears the "burden of persuasion," though the opposing party may bear a burden

to "go forward with evidence"); *Webre Steib Co.* v. *Commissioner,* 324 U. S. 164, 171 (1945) (claimant bears a "burden of going forward with evidence . . . *as well as* the burden of proof") (emphasis added). During this period the Courts of Appeals also limited the meaning of burden of proof to burden of persuasion, and explicitly distinguished this concept from the burden of production.*

The emerging consensus on a definition of burden of proof was reflected in the evidence treatises of the 1930's and 1940's. "The burden of proof is the obligation which rests on one of the parties to an action to persuade the trier of the facts, generally the jury, of the truth of a proposition which he has affirmatively asserted by the pleadings." W. Richardson, Evidence 143 (6th ed. 1944); see also 1 B. Jones, Law of Evidence in Civil Cases 310 (4th ed. 1938) ("The modern authorities are substantially agreed that, in its strict primary sense, 'burden of proof' signifies the duty or obligation of establishing, in the mind of the trier of facts, conviction on the ultimate issue"); J. McKelvey, Evidence 64 (4th ed. 1932) ("[T]he proper meaning of [burden of proof]" is "the duty of the person alleging the case to prove it," rather than "the duty of the one party or the other to introduce evidence").

We interpret Congress' use of the term "burden of proof" in light of this history, and presume Congress intended the phrase to have the meaning generally accepted in the legal community at the time of enactment. *Holmes* v. *Securities Investor Protection Corporation,* 503 U. S. 258, 268 (1992); *Miles* v. *Apex Marine Corp.,* 498 U. S. 19, 32 (1990); *Cannon*

---

*See, *e. g., Lee* v. *State Bank & Trust Co.,* 38 F. 2d 45, 48 (CA2 1930); *United States* v. *Knoles,* 75 F. 2d 557, 561 (CA8 1935); *Department of Water and Power of Los Angeles* v. *Anderson,* 95 F. 2d 577, 583 (CA9 1938); *Rossman* v. *Blunt,* 104 F. 2d 877, 880 (CA6 1939); *Cory* v. *Commissioner,* 126 F. 2d 689, 694 (CA3 1942); *Commissioner* v. *Bain Peanut Co. of Tex.,* 134 F. 2d 853, 860, n. 2 (CA5 1943); *New York Life Ins. Co.* v. *Taylor,* 147 F. 2d 297, 301 (CADC 1945).

v. *University of Chicago*, 441 U. S. 677, 696–698 (1979). These principles lead us to conclude that the drafters of the APA used the term "burden of proof" to mean the burden of persuasion. As we have explained, though the term had once been ambiguous, that ambiguity had largely been eliminated by the early 20th century. After *Hill,* courts and commentators almost unanimously agreed that the definition was settled. And Congress indicated that it shared this settled understanding, when in the Communications Act of 1934 it explicitly distinguished between the burden of proof and the burden of production. 47 U. S. C. §§ 309(e) and 312(d) (a party has *both* the "burden of proceeding with the introduction of evidence and the burden of proof"). Accordingly, we conclude that as of 1946 the ordinary meaning of burden of proof was burden of persuasion, and we understand the APA's unadorned reference to "burden of proof" to refer to the burden of persuasion.

### B

We recognize that we have previously asserted the contrary conclusion as to the meaning of burden of proof in § 7(c) of the APA. In *NLRB* v. *Transportation Management Corp.,* 462 U. S. 393 (1983), we reviewed the National Labor Relations Board's (NLRB's) conclusion that the employer had discharged the employee because of the employee's protected union activity. In such cases the NLRB employed a burden shifting formula typical in dual motive cases: The employee had the burden of persuading the NLRB that antiunion animus contributed to the employer's firing decision; the burden then shifted to the employer to establish as an affirmative defense that it would have fired the employee for permissible reasons even if the employee had not been involved in union activity. *Id.,* at 401–402. The employer claimed that the NLRB's burden shifting formula was inconsistent with the National Labor Relations Act (NLRA), but we upheld it as a reasonable construction of the NLRA. *Id.,* at 402–403.

The employer in *Transportation Management* argued that the NLRB's approach violated § 7(c)'s burden of proof provision, which the employer read as imposing the burden of persuasion on the employee. In a footnote, we summarily rejected this argument, concluding that "[§ 7(c)] . . . determines only the burden of going forward, not the burden of persuasion. *Environmental Defense Fund, Inc.* v. *EPA*, [548 F. 2d 998, 1004, 1013–1015 (CADC 1976)]." *Id.*, at 404, n. 7. In light of our discussion in Part II–A above, we do not think our cursory conclusion in the *Transportation Management* footnote withstands scrutiny. The central issue in *Transportation Management* was whether the NLRB's burden shifting approach was consistent with the NLRA. The parties and the *amici* in *Transportation Management* treated the APA argument as an afterthought, devoting only one or two sentences to the question. None of the briefs in the case attempted to explain the ordinary meaning of the term. *Transportation Management*'s cursory answer to an ancillary and largely unbriefed question does not warrant the same level of deference we typically give our precedents.

Moreover, *Transportation Management* reached its conclusion without referring to *Steadman* v. *SEC*, 450 U. S. 91 (1981), our principal decision interpreting the meaning of § 7(c). In *Steadman* we considered what *standard* of proof § 7(c) required, and we held that the proponent of a rule or order under § 7(c) had to meet its burden by a preponderance of the evidence, not by clear and convincing evidence. Though we did not explicitly state that § 7(c) imposes the burden of persuasion on the party seeking the rule or order, our reasoning strongly implied that this must be so. We assumed that burden of proof meant burden of persuasion when we said that we had to decide "the degree of proof which must be adduced by the proponent of a rule or order *to carry its burden of persuasion* in an administrative proceeding." *Id.*, at 95 (emphasis added). More important, our holding that the party with the burden of proof must prove

its case by a preponderance only makes sense if the burden of proof means the burden of persuasion. A standard of proof, such as preponderance of the evidence, can apply only to a burden of persuasion, not to a burden of production.

We do not slight the importance of adhering to precedent, particularly in a case involving statutory interpretation. But here our precedents are in tension, and we think our approach in *Steadman* makes more sense than does the *Transportation Management* footnote. And although we reject *Transportation Management*'s reading of § 7(c), the holding in that case remains intact. The NLRB's approach in *Transportation Management* is consistent with § 7(c) because the NLRB first required the employee to persuade it that antiunion sentiment contributed to the employer's decision. Only then did the NLRB place the burden of persuasion on the employer as to its affirmative defense.

### C

In addition to the *Transportation Management* footnote, the Department relies on the Senate and House Judiciary Committee Reports on the APA to support its claim that burden of proof means only burden of production. See *Environmental Defense Fund* v. *EPA*, 548 F. 2d, at 1014–1015 (accepting this argument), cited in *Transportation Management, supra*, at 404, n. 7. We find this legislative history unavailing. The Senate Judiciary Committee Report on the APA states as follows:

"That the proponent of a rule or order has the burden of proof means not only that the party initiating the proceeding has the general burden of coming forward with a prima facie case but that other parties, who are proponents of some different result, also for that purpose have a burden to maintain. Similarly the requirement that no sanction be imposed or rule or order be issued except upon evidence of the kind specified means that the proponents of a denial of relief must sustain such denial by

that kind of evidence. For example, credible and credited evidence submitted by the applicant for a license may not be ignored except upon the requisite kind and quality of contrary evidence. No agency is authorized to stand mute and arbitrarily disbelieve credible evidence. Except as applicants for a license or other privilege may be required to come forward with a prima facie showing, no agency is entitled to presume that the conduct of any person or status of any enterprise is unlawful or improper." S. Rep. No. 752, 79th Cong., 1st Sess., 22 (1945).

The House Judiciary Committee Report contains identical language, along with the following:

"In other words, this section means that every proponent of a rule or order or the denial thereof has the burden of coming forward with sufficient evidence therefor; and in determining applications for licenses or other relief any fact, conduct, or status so shown by credible and credited evidence must be accepted as true except as the contrary has been shown or such evidence has been rebutted or impeached by duly credited evidence or by facts officially noticed and stated." H. R. Rep. No. 1980, 79th Cong., 2d Sess., 36 (1946).

The Department argues that this legislative history indicates congressional intent to impose a burden of production on the proponent. But even if that is so, it does not mean that § 7(c) is concerned *only* with imposing a burden of production. That Congress intended to impose a burden of production does not mean that Congress did not also intend to impose a burden of persuasion.

Moreover, these passages are subject to a natural interpretation compatible with congressional intent to impose a burden of persuasion on the party seeking an order. The primary purpose of these passages is not to define or allocate the burden of proof. The quoted passages are primarily

concerned with the burden placed on the *opponent* in administrative hearings ("other parties . . . have a burden to maintain"), particularly where the opponent is the Government. The Committee appeared concerned with those cases in which the "proponent" seeks a license or other privilege from the Government, and in such cases did not want to allow the agency "to stand mute and arbitrarily disbelieve credible evidence." The Reports make clear that once the licensee establishes a prima facie case, the burden shifts to the Government to rebut it. This is perfectly compatible with a rule placing the burden of persuasion on the applicant, because when the party with the burden of persuasion establishes a prima facie case supported by "credible and credited evidence," it must either be rebutted or accepted as true.

The legislative history the Department relies on is imprecise and only marginally relevant. Congress chose to use the term "burden of proof" in the text of the statute, and given the substantial evidence that the ordinary meaning of burden of proof was burden of persuasion, this legislative history cannot carry the day.

## D

In part due to Congress' recognition that claims such as those involved here would be difficult to prove, claimants in adjudications under these statutes benefit from certain statutory presumptions easing their burden. See 33 U. S. C. § 920; 30 U. S. C. § 921(c); *Del Vecchio* v. *Bowers*, 296 U. S. 280, 286 (1935). Similarly, the Department's solicitude for benefits claimants is reflected in the regulations adopting additional presumptions. See 20 CFR §§ 718.301–718.306 (1993); *Mullins Coal*, 484 U. S., at 158. But with the true doubt rule the Department attempts to go one step further. In so doing, it runs afoul of the APA, a statute designed "to introduce greater uniformity of procedure and standardization of administrative practice among the diverse

agencies whose customs had departed widely from each other." *Wong Yang Sung* v. *McGrath*, 339 U. S. 33, 41 (1950). That concern is directly implicated here, for under the Department's reading each agency would be free to decide who shall bear the burden of persuasion. Accordingly, the Department cannot allocate the burden of persuasion in a manner that conflicts with the APA.

## IV

Under the Department's true doubt rule, when the evidence is evenly balanced the claimant wins. Under § 7(c), however, when the evidence is evenly balanced, the benefits claimant must lose. Accordingly, we hold that the true doubt rule violates § 7(c) of the APA.

Because we decide these cases on the basis of § 7(c), we need not address the Court of Appeals' holding in *Greenwich Collieries* that the true doubt rule conflicts with § 718.403 or with *Mullins Coal, supra.*

*Affirmed.*

JUSTICE SOUTER, with whom JUSTICE BLACKMUN and JUSTICE STEVENS join, dissenting.

For more than 50 years, in adjudicating benefits claims under the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U. S. C. § 901 *et seq.,* and for more than 15 years under the Black Lung Benefits Act (BLBA), 30 U. S. C. § 901 *et seq.* (1988 ed. and Supp. IV), the Department of Labor has applied the "true doubt" rule, providing that when the evidence submitted by a claimant and by a party opposing the award is of equal weight, the claimant wins. The rule thus places the risk of nonpersuasion on the opponent of the benefits claim. Today, the Court strikes the rule down as conflicting with § 7(c) of the Administrative Procedure Act (APA), 5 U. S. C. § 556(d), passed by Congress in 1946. I respectfully dissent.

I

So far as relevant, § 7(c) of the APA states that

> "[e]xcept as otherwise provided by statute, the proponent of a rule or order has the burden of proof. Any oral or documentary evidence may be received, but the agency as a matter of policy shall provide for the exclusion of irrelevant, immaterial, or unduly repetitious evidence. A sanction may not be imposed or rule or order issued except on consideration of the whole record or those parts thereof cited by a party and supported by and in accordance with the reliable, probative, and substantial evidence." 5 U. S. C. § 556(d).

The majority's holding that "burden of proof" in the first sentence of this provision means "burden of persuasion" surely carries the force of the preferred meaning of the term in today's general usage, as the Court's opinion demonstrates. But we are concerned here not with the commonly preferred meaning of the term today, but with its meaning as understood and intended by Congress in enacting § 7(c) of the APA in 1946. That is not a matter about which preference has been constant, or Congress silent, or even a subject of first impression for this Court.

The phrase "burden of proof" has been used in two ways, to mean either the burden of persuasion (the risk of nonpersuasion), see 9 J. Wigmore, Evidence § 2486 (J. Chadbourn rev. 1981) (hereinafter Wigmore), or the burden of production (of going forward with evidence), see *id.*, § 2487. The latter sense arose from the standard common-law rule that in order "to keep the jury within the bounds of reasonable action," the party bearing the burden of production had to put forth enough evidence to make a prima facie case in order to get to the jury. *Ibid.* At the turn of the century, Thayer noted that burden of proof, in the sense of "going forward with argument or evidence," is "the meaning of the term in common speech . . . [and] also a familiar legal

usage . . . ."   J. Thayer, A Preliminary Treatise on Evidence at the Common Law 385–386 (1898).   Thayer described Chief Justice Shaw's unsuccessful attempts to restrict the Massachusetts courts to the other (burden of persuasion) meaning of the phrase, *id.*, at 355–357, 385–387, and n. 1, and argued that since the "widest legal usage" of the phrase and "the use of the phrase in ordinary discourse" was to mean burden of production, burden of proof should only be used in that sense, see Thayer, The Burden of Proof, 4 Harv. L. Rev. 45, 69 (1890).

Although the Court works hard to show that the phrase had acquired a settled meaning in the alternative sense by the time the APA was passed in 1946, there is good evidence that the courts were still using the term either way and that Congress followed Thayer.   Indeed, just nine years after *Hill* v. *Smith*, 260 U. S. 592 (1923), in which Justice Holmes is said to have firmed up the use of "burden of proof" to mean burden of persuasion, this Court reverted to using the phrase in its burden of production sense instead.[1]   See *Heiner* v. *Donnan*, 285 U. S. 312, 329 (1932) ("A rebuttable [prima facie] presumption clearly is a rule of evidence which has the effect of shifting the burden of proof") (citing *Mobile, J. & K. C. R. Co.* v. *Turnipseed*, 219 U. S. 35, 43 (1910) (stating that "[t]he only legal effect of this [presumption] is to cast upon [defendant] the duty of producing some evidence to the contrary")).   In such usage *Heiner* appears in line with *Hawes* v. *Georgia*, 258 U. S. 1 (1922) (upholding rebuttable presumption casting "burden of proof" on defendant in criminal case); see *Tot* v. *United States*, 319 U. S. 463, 470–471 (1943) (describing *Hawes* as involving statutory provision that permissibly "shift[ed] the burden of proof" once a prima facie case was made by prosecution).   And courts just three years before the passage of the APA held that burden of proof was at least sometimes used by Congress to mean

---

[1] One can hardly blame the great Justice, who had left the bench at the beginning of that year.

"burden of going forward with the evidence," and not burden of persuasion. *Northwestern Elec. Co.* v. *Federal Power Comm'n,* 134 F. 2d 740, 743 (CA9 1943) (interpreting "burden of proof" in Federal Power Act, 16 U. S. C. § 825(a)), aff'd, 321 U. S. 119 (1944).

Contrary to the Court's understanding, commentators did not think the ambiguity of the phrase had disappeared before passage of the APA, and, at the time, some even thought it unsettled whether burden of persuasion or of going forward with the evidence was the primary meaning of the phrase. As one commentator (relied on by the majority here) explained in 1938, although in its "strict primary sense, 'burden of proof' signifies" burden of persuasion, "[i]n its secondary sense, the expression 'burden of proof' signifies the duty that rests upon a party of going forward with the evidence at any given stage of the case—although eminent authority holds that this is, or should be, its primary sense." 1 B. Jones, Law of Evidence in Civil Cases § 176, p. 310 (4th ed. 1938) (citing Thayer). He noted: "The expression 'burden of proof' has not a fixed and unvarying meaning and application. On the contrary, it is used, at times indiscriminately, to signify one or both of two distinct and separate ideas. Courts and commentators have striven to correct this variable usage and bring clarity and uniformity to the subject, but without noticeable success." Jones, *supra,* at 309 (footnote omitted). That commentary retained substantially the same description 20 years later, and thereafter, see 1 B. Jones, Law of Evidence, Civil and Criminal, § 204, pp. 361–363 (5th ed. 1958); 1 S. Gard, Jones on Evidence § 5:1, pp. 519–520 (6th ed. 1972). Other commentators noted the persistent confusion of the terms in the 1940's. See, *e. g.,* W. Richardson, Law of Evidence § 172 (6th ed. 1944) (" '[B]urden of proof' is frequently misused by our courts"); J. Maguire, Evidence, Common Sense and Common Law 175 (1947) ("Under our law the term burden of proof has been used to express two rather different ideas, and as might be expected

this usage has led to a jumble"). Further, at the time of the APA's passage, the American Law Institute, Model Code of Evidence (1942), noted both meanings, see Wigmore § 2485, at 284, comments. Thus, courts and commentators continued to note the two meanings both before and long after the enactment of the APA, and use of "burden of proof" in either of its senses continued to create "the lamentable ambiguity of phrase and confusion of terminology under which our law has so long suffered," *id.*, § 2485.

Although standard usage had not made a choice of meanings by 1946, Congress did make one, and the meaning it chose for the phrase as used in § 7(c) was "burden of production." In extensive Reports on the pending legislation, both the Senate and the House explained the meaning of § 7(c):

> "That the proponent of a rule or order has the burden of proof means not only that the party initiating the proceeding has the general burden of coming forward with a prima facie case but that other parties, who are proponents of some different result, also for that purpose have a burden to maintain. Similarly the requirement that no sanction be imposed or rule or order be issued except upon evidence of the kind specified means that the proponents of a denial of relief must sustain such denial by that kind of evidence. . . ." S. Rep. No. 752, 79th Cong., 1st Sess., 22 (1945), reprinted in Legislative History of the Administrative Procedure Act, S. Doc. No. 248, 79th Cong., 2d Sess., 208 (1946) (hereinafter Leg. Hist.); H. R. Rep. No. 1980, 79th Cong., 2d Sess., 36 (1946), Leg. Hist. 270–271.

The House Report added that,

> "[i]n other words, this section means that every proponent of a rule or order or the denial thereof has the burden of coming forward with sufficient evidence therefor . . . .

"The first and second sentences of the section therefore mean that, where a party having the burden of proceeding has come forward with a prima facie and substantial case, he will prevail unless his evidence is discredited or rebutted." *Id.*, at 36–37, Leg. Hist. 270–271.[2]

Because Congress stated that "burden of proof means" a "burden of coming forward," and further explained that the burden could be shouldered by both proponents and opponents of a rule or order, the strong probability is that Congress meant to use "burden of proof" to mean burden of coming forward and not burden of persuasion, for a burden of persuasion cannot simultaneously rest on both parties. See generally Wigmore § 2489. The commentators agree. "The legislative history suggests that the term 'burden of proof' was intended to denote the 'burden of going forward.'" 1 C. Koch, Administrative Law and Practice § 6.42, p. 486 (1985); "The legislative history of the A. P. A. burden of proof provision states that the party initiating the proceeding has, at a minimum, the burden of establishing a *prima facie* case, but a burden of proof may also rest on other parties seeking a different decision by the agency." 4 J. Stein, G. Mitchell, & B. Mezines, Administrative Law § 24.02, p. 24–25 (1994); accord, 3 K. Davis, Administrative Law Treatise § 16.9, pp. 257–258 (2d ed. 1980) (citing a lower court's "analysis of the Senate and House reports on the APA and the Attorney General's Manual").

---

[2] The Attorney General found the phrase ambiguous, noting that "[t]here is some indication that the term 'burden of proof' was not employed in any strict sense, but rather as synonymous with the 'burden of going forward.' In either case, it is clear from the introductory clause that this general statement was not intended to repeal specific provisions of other statutes which, as by establishing presumptions, alter what would otherwise be the 'burden of proof' or the 'burden of going forward.'" Attorney General's Manual on the Administrative Procedure Act 75 (1947) (footnote omitted).

The congressional choice of the burden of production meaning was in fact understood from the first and was the subject of some lament by commentators, who criticized the first sentence of § 7(c) (already in its current formulation as "the proponent of a rule or order has the burden of proof") as unhelpful:

"The first sentence is confusing, and is at best unimportant. . . . For example, where a hearing is called to determine whether or not a license application should be granted, the 'proponent' of the 'order' would seem to be the applicant if the order turns out to be an order granting the application, or the agency if the order turns out to be an order denying the application. We conclude that this sentence should be eliminated from the bill." Committee on Administrative Law of New York State Bar Assn. and Association of the Bar of the City of New York, Joint Report on Proposed Federal Administrative Procedure Act 16 (Dec. 26, 1945).

It was certainly not their understanding that this provision established a uniform burden of persuasion.[3]

## II

Until today, this Court's reading of § 7(c) has been consonant with the congressional understanding. In *NLRB* v.

---

[3] Congressional intent that in § 7(c) burden of proof mean burden of production is further confirmed by the fact that as originally introduced in the House, § 7(c) stated that "[t]he proponent of a rule or order shall have the burden of proceeding except as statutes otherwise provide." H. R. 1203, 79th Cong., 1st Sess., § 7(c), (introduced Jan. 1945), Leg. Hist. 158; see Leg. Hist. 11, 300. Congress prepared extensive side-by-side comparisons of the bill as introduced and as amended into its enacted form, but neither Congress nor any of the commentators gave any indication that the change in language was intended to change the meaning of the sentence. See generally Senate Judiciary Committee, Text of S. 7, Respecting Federal Administrative Procedure and Judicial Review and Revised Text, 79th Cong., 1st Sess. (Comm. Print 1945).

*Transportation Management Corp.,* 462 U. S. 393 (1983), this Court considered the phrase "burden of proof" as used in that section and rejected the position the Court now takes. In *Transportation Management,* the Court upheld the rule of the National Labor Relations Board (Board), that its General Counsel has the burden of persuading the Board that antiunion animus contributed to an employer's decision to fire the employee, and that the burden of persuasion then shifts to the employer to prove that the employee would have been fired even without involvement in protected union activities. Confronting the employer's argument that § 7(c) barred the Board from ever shifting the burden of persuasion to the employer, the Court rejected it, on the ground that § 7(c) "determines only the burden of going forward, not the burden of persuasion." *Id.,* at 404, n. 7 (citing *Environmental Defense Fund, Inc.* v. *EPA,* 548 F. 2d 998, 1004, 1013–1015 (CADC 1976) (Leventhal, J.)).

Today's abandonment of *Transportation Management*'s holding is not only a mistake, but one that puts the Court at odds with that fundamental principle of precedent that "[c]onsiderations of *stare decisis* have special force in the area of statutory interpretation, for . . . Congress remains free to alter what we have done." *Patterson* v. *McLean Credit Union,* 491 U. S. 164, 172–173 (1989); accord, *Square D Co.* v. *Niagara Frontier Tariff Bureau, Inc.,* 476 U. S. 409, 424 (1986); *Illinois Brick Co.* v. *Illinois,* 431 U. S. 720, 736 (1977).[4] Even on the assumption that the conclusion reached in *Transportation Management* was debatable at the time the case was decided, it was undoubtedly a reasonable construction of a phrase that (as shown above) was ambiguous

---

[4] I note in this regard that none of the parties argued for overruling *Transportation Management;* only *amicus* American Insurance Association did so; and the courts below did not pass on the question. Rather, respondents argue that *Transportation Management* does not bar the conclusion that a different sentence of § 7(c) places the burden of persuasion on the proponent of an order.

in the general usage of 1946, and in the 11 years since the construction was settled by *Transportation Management,* Congress has not seen fit to disturb it by amending § 7(c). Compare, *e. g., Johnson* v. *Transportation Agency, Santa Clara Cty.,* 480 U. S. 616, 629–630, n. 7 (1987), with *Califano* v. *Sanders,* 430 U. S. 99, 105–107 (1977). The settled construction should therefore stand.

This Court, like the court below, tries to avoid *Transportation Management* by implying that the Court's definition of burden of proof in § 7(c) as burden of production was inessential to its holding, since the Court only allowed the burden of persuasion to be placed on the employer after the NLRB had met its burden of persuasion on the elements of an unfair labor practice. 992 F. 2d 1277, 1281–1284 (CA3 1993); cf. *ante,* at 278 ("[T]he holding in that case remains intact"). The problem with this reading of *Transportation Management,* however, is that it is not at all what this Court said, or could have said. The reasoning chosen by the Court to justify its conclusion was that burden of proof in § 7(c) means burden of production, and thus is no impediment to the Board's rule. And in so explaining, the Court cited the leading case from the Court of Appeals for the District of Columbia Circuit that had held "proof" synonymous with "production" in the text under examination. *Environmental Defense Fund, supra.*

The Court also reasons that the burden of proof holding of *Transportation Management* should be abandoned as conflicting with *Steadman* v. *SEC,* 450 U. S. 91 (1981), a decision announced just two Terms prior to *Transportation Management.* But *Steadman* and *Transportation Management* are simply not inconsistent with each other. Indeed, neither the parties to *Transportation Management* nor the Court itself saw *Steadman* as even relevant to the questions presented in *Transportation Management.* In *Steadman,* a mutual funds manager argued that in a disciplinary proceeding to determine whether he had violated the federal securities

laws, the Securities and Exchange Commission had no choice but to use the clear-and-convincing standard of proof, rather than the standard of preponderance of the evidence. *Steadman* read the third sentence of § 7(c) (a rule or order must be "supported by and in accordance with the reliable, probative, and substantial evidence") to mean that preponderance of the evidence, not the clear-and-convincing standard, applies in adjudications under the APA. *Steadman* thus holds that the party with the burden of persuasion must satisfy it by a preponderance, but does not purport to define "burden of proof" under the APA or to decide who bears the burden of persuasion, since it was uncontested in that case that the burden of persuasion was on the Government in a securities disciplinary proceeding. *Transportation Management*, on the other hand, holds that "burden of proof" in § 7(c) means burden of production. The question left open by each decision is who bears the burden of persuasion. As to that, § 7(c) is silent.

It is also worth remarking that *Transportation Management* came as no surprise when it was decided, other federal courts having anticipated this Court's reading of the § 7(c) burden as one of production. See, *e. g.*, *Environmental Defense Fund, Inc.* v. *EPA*, 548 F. 2d, at 1013 ("'burden of proof' [§ 7(c)] casts upon the 'proponent' is the burden of coming forward with proof, and not the ultimate burden of persuasion"); *Old Ben Coal Corp.* v. *Interior Bd. of Mine Operations Appeals, United States Dept. of Interior*, 523 F. 2d 25, 40 (CA7 1975) ("burden of putting forth a *prima facie* case"); *Maine* v. *United States Dept. of Labor*, 669 F. 2d 827, 829 (CA1 1982) (burden "of producing sufficient evidence to make out a prima facie case"); but cf. *Kerner* v. *Flemming*, 283 F. 2d 916, 921–922, and n. 8 (CA2 1960) (assuming, *arguendo*, the term meant burden of persuasion). And at least since *Transportation Management*, every Court of Appeals (except the one below in this case) to have reached the issue has understood that the question was firmly settled by

*Transportation Management* and its predecessor in the District of Columbia Circuit, *Environmental Defense Fund.* See, *e. g., Freeman United Coal Mining Co.* v. *Office of Workers' Compensation Programs,* 988 F. 2d 706, 711 (CA7 1993) ("The Supreme Court has resolved this ambiguity [in §7(c)]. 'Burden of proof' as that term is used in the APA means the burden of going forward, not the burden of persuasion"); *Hazardous Waste Treatment Council* v. *EPA,* 886 F. 2d 355, 366 (CADC 1989) *(per curiam)* ("initial burden of going forward with a *prima facie* case"), cert. denied, 498 U. S. 849 (1990); *Merritt* v. *United States,* 960 F. 2d 15, 18 (CA2 1992) ("refers only to the burden of going forward with evidence, not the burden of persuasion"); *Bosma* v. *United States Dept. of Agriculture,* 754 F. 2d 804, 810 (CA9 1984) ("burden of going forward with evidence"); *Alameda Cty. Training and Employment Bd./Associated Community Action Program* v. *Donovan,* 743 F. 2d 1267, 1269 (CA9 1984) ("merely places the burden of production on [proponent], not the ultimate burden of persuasion"); *Dazzio* v. *FDIC,* 970 F. 2d 71, 77 (CA5 1992) ("refers only to the burden of going forward with evidence; not the ultimate burden of persuasion"); *Skukan* v. *Consolidation Coal Co.,* 993 F. 2d 1228, 1236–1238 (CA6 1993) ("burden of production"). Moreover, the lower courts' views were in accord with the commentators. See, *e. g.,* 3 Davis, Administrative Law Treatise §16.9, at 257 (burden of proof in §7(c) means only "burden of going forward" and not burden of persuasion) (citing *Environmental Defense Fund, supra*); 1 Koch, Administrative Law and Practice §6.42, at 245 (1994 Supp.) ("The phrase 'burden of proof' as used in the APA §556(d) means the burden of going forward with evidence. That phrase in the context of the APA does not mean the ultimate burden of persuasion") (footnote omitted); 4 Stein, Mitchell, & Mezines, Administrative Law §24.02, at 24–21, n. 3 (§7(c) "only directs that the [proponent] has the burden of production"); G. Edles & J. Nelson, Federal Regulatory Process §6.7, pp. 151–152 (2d

ed. 1992) ("[T]he burden of proof under the APA refers only to the burden of going forward with evidence") (each citing *Transportation Management,* 462 U. S., at 403, n. 7).

Nor is there any argument that the vitality has gone out of *Transportation Management* over the last 11 years. This Court, indeed, has cited the case for the very proposition that the Court now repudiates, in the course of explaining that we ourselves had used the term "burden of proof" in Title VII suits to mean burden of production, not burden of persuasion:

> "[T]o the extent that those cases speak of an employer's 'burden of proof' with respect to a legitimate business justification defense . . . they should have been understood to mean an employer's production—but not persuasion—burden. Cf., *e. g., NLRB* v. *Transportation Management Corp.,* 462 U. S. 393, 404, n. 7 (1983)." *Wards Cove Packing Co.* v. *Atonio,* 490 U. S. 642, 660 (1989).

If the *Wards Cove* Court could rely on *Transportation Management* to hold that in innumerable Title VII disparate-impact cases over many years we (and the lower courts) had used the term "burden of proof" to mean only "burden of production" it is hard to place much weight on the majority's reference to a consistent practice to the contrary since 1923.

Today's decision to repudiate *Transportation Management* is made more regrettable by the fact that the Court's adherence to the case in *Ward's Cove* came after the Court had been made aware of the role of the true doubt rule in black lung litigation, which presupposed *Transportation Management*'s reading of § 7(c). In *Mullins Coal Co. of Va.* v. *Director, Office of Workers' Compensation Programs,* 484 U. S. 135 (1987), upholding the Secretary of Labor's interpretation of a BLBA interim regulation about the prima facie standard for invoking a statutory presumption of eligibility, this Court explicitly noted the operation of the true doubt

rule once both parties' evidence had been introduced and (as here) the presumption had dropped out of the case. See *id.,* at 144, n. 12 (true doubt rule "ensures that the employer will win, on invocation or rebuttal, only when its evidence is *stronger* than the claimant's"). We acknowledged the Secretary's position that the BLBA " 'embodies the principle that doubt is to be resolved in favor of the claimant, [which] plays an important role in claims determinations . . . [,]' " *id.,* at 156, n. 29 (quoting 43 Fed. Reg. 36826 (1978)), and that the Benefits Review Board "has consistently upheld the principle that, where true doubt exists, that doubt shall be resolved in favor of the claimant," 484 U. S., at 144, n. 12 (internal quotation marks and citation omitted).

Had we, indeed, suggested otherwise, we would have been bucking the strong tide that the Court turns back today, for the other federal courts have been applying some form of the true doubt rule, either as judicial statutory interpretation or as the agency's rule, in adjudicating claims after enactment of the APA, as well as before it, for a good 50 years. See, *e. g., Friend* v. *Britton,* 220 F. 2d 820, 821 (CADC 1955) ("Doubts, including the factual, are to be resolved in favor of the employee or his dependent family"); *Bath Iron Works Corp.* v. *White,* 584 F. 2d 569, 574 (CA1 1978) ("[T]he judicial policy [is] that 'all doubtful questions are to be resolved in favor of the injured employee' . . . in order to place the burden of possible error on the employer who is better able to bear it"); *Volpe* v. *Northeast Marine Terminals,* 671 F. 2d 697, 701 (CA2 1982) ("[A]ll doubtful questions of fact [are to] be resolved in favor of the injured employee") (internal quotation marks omitted);[5] *Adkins* v. *Director, Office of*

---

[5] Until the decision below, the Court of Appeals for the Third Circuit itself applied the true doubt rule. See, *e. g., Bonessa* v. *United States Steel Corp.,* 884 F. 2d 726, 730 (1989) ("The [Administrative Law Judge] noted that the contradictory nature of the x-ray evidence established 'true doubt' as to the existence of pneumoconiosis and resolved that doubt, as is proper, in favor of [claimant]").

*Workers' Compensation Programs, Dept. of Labor,* 958 F. 2d 49, 52, n. 4 (CA4 1992) ("Equally probative evidence creates a 'true doubt,' which must be resolved in favor of the miner"); *Greer* v. *Director, Office of Workers' Compensation Programs, Dept. of Labor,* 940 F. 2d 88, 91 (CA4 1991) ("We have a true doubt. We give [claimant] the benefit of that doubt"); *Army & Air Force Exchange Serv.* v. *Greenwood,* 585 F. 2d 791, 794 (CA5 1978) ("[T]he judicial policy has long been to resolve all doubts in favor of the employee and his family"); *Skukan* v. *Consolidation Coal Co.,* 993 F. 2d, at 1239 ("true doubt rule is utilized to have equally probative but conflicting evidence weighed in favor of the claimant"); *Freeman United Coal Mining Co.* v. *Office of Workers' Compensation Programs,* 988 F. 2d, at 711 (applying true doubt rule as "judicial assignment of the burden of persuasion to the employer"); *Jones* v. *Director, Office of Workers' Compensation Programs, Dept. of Labor,* 977 F. 2d 1106, 1109 (CA7 1992) (true doubt rule places "burden of possible error on those best able to bear it," *i. e.,* employers); *Ware* v. *Director, Office of Workers' Compensation Programs, Dept. of Labor,* 814 F. 2d 514, 517 (CA8 1987) ("[A]ny doubts should be resolved in favor of the disabled miner"); *Parsons Corp. of Cal.* v. *Director, Office of Workers' Compensation Programs, Dept. of Labor,* 619 F. 2d 38, 41 (CA9 1980) ("statutory policy that all doubtful questions of fact be resolved in favor of the injured employee"); *Hansen* v. *Director, Office of Workers' Compensation Programs, Dept. of Labor,* 984 F. 2d 364, 369 (CA10 1993) ("'true doubt' rule applies where equally probative but contradictory medical documentation exists"); *Bosco* v. *Twin Pines Coal Co.,* 892 F. 2d 1473, 1476 (CA10 1989) ("[D]oubts should be resolved in favor of the disabled miner"); *Stomps* v. *Director, Office of Workers' Compensation Programs, Dept. of Labor,* 816 F. 2d 1533, 1534 (CA11 1987) (same); for a sampling of the pre-APA cases, see, *e. g.,* *F. H. McGraw & Co.* v. *Lowe,* 145 F. 2d 886, 887, n. 2, 888 (CA2 1944) (upholding agency policy that "doubtful questions

incapable of scientific resolution are to be resolved in favor of the workman" under LHWCA); *Southern S. S. Co.* v. *Norton,* 101 F. 2d 825, 827 (CA3 1939) ("doubts should be resolved in [claimant's] favor" under LHWCA); *Southern Pac. Co.* v. *Sheppeard,* 112 F. 2d 147, 148 (CA5 1940) ("[W]here there is doubt it should be resolved in favor of the injured employee or his family" under LHWCA).

## III

Because § 7(c) is silent on the burden of persuasion, the job of placing it is left to the bounded discretion of the agencies, subject to judicial review, when interpreting their organic statutes, by customary reference to statutory text, congressional intent, experience, policy, and relevant evidentiary probabilities. See 3 Davis, Administrative Law § 16.9, at 257–258.[6] This is only to be expected, since the issue of who bears the risk of nonpersuasion raises a traditional "question of policy and fairness based on experience in . . . different situations." *Keyes* v. *School Dist. No. 1, Denver,* 413 U. S. 189, 209 (1973) (quoting 9 J. Wigmore, Evidence § 2486, p. 275 (3d ed. 1940)); accord, 2 J. Strong, McCormick on Evidence § 337, p. 427 (4th ed. 1992), not a matter readily lumped in with the formalities of procedure. While the APA was meant to provide for uniform procedures in administrative adjudications, it is unremarkable that it stopped short of making a substantive policy choice that in every formal hearing the burden of persuasion must rest on one party or the other.

---

[6] See, *e. g., NLRB* v. *Transportation Management Corp.,* 462 U. S. 393, 401–403 (1983); *NLRB* v. *Curtin Matheson Scientific, Inc.,* 494 U. S. 775, 786–796 (1990); *Bowen* v. *Yuckert,* 482 U. S. 137, 146–147, n. 5 (1987); *Garrett* v. *Moore-McCormack Co.,* 317 U. S. 239, 246–249 (1942); *Concrete Pipe & Products of Cal., Inc.* v. *Construction Laborers Pension Trust for Southern Cal.,* 508 U. S. 602, 621–631 (1993); 38 CFR § 3.102 (1993) (doubts in veteran's benefits adjudications resolved in favor of claimant); 38 U. S. C. § 5107 (1988 ed., Supp. IV) (same).

Nor, apart from § 7(c), are the choices made under the statutes in question here vulnerable on judicial scrutiny. In LHWCA cases over the last 50 years, the assignment to the employer of the risk of nonpersuasion can be seen as placing it on "those best able to bear it," *F. H. McGraw & Co., supra,* at 887, 888, and as comporting with both the remedial nature of the LHWCA, see *Northeast Marine Terminal Co.* v. *Caputo,* 432 U. S. 249, 268 (1977), and the dangerous nature of longshoring, see S. Rep. No. 92–1125, p. 2 (1972). As to the BLBA, there is no question about the consistency of congressional intent with the recitation in the Secretary's regulation, 20 CFR § 718.3(c) (1993), that "Congress intended that [BLBA] claimants be given the benefit of all reasonable doubt as to the existence of total or partial disability or death due to pneumoconiosis." As Congress explained, the BLBA "is intended to be a remedial law. . . . In the absence of definitive medical conclusions there is a clear need to resolve doubts in favor of the disabled miner or his survivors." S. Rep. No. 92–743, p. 11 (1972). The true doubt rule has been applied in these benefits adjudications for more than 15 years, see, *e. g.,* Black Lung—A Study in Occupational Disease Compensation (1976), reprinted in Black Lung Benefits Reform Act, 1976: Hearings on H. R. 10760 and S. 3183 before the Subcommittee on Labor of the Senate Committee on Labor and Public Welfare, 94th Cong., 2d Sess., 459, 488–489 (1976) ("[C]onflicts in the evidence are required to be resolved by the adjudicator in favor of the claimant"); *Provance* v. *United States Steel Corp.,* 1 BLR 1–483, 485–486 (Benefits Rev. Bd. 1978), and the Secretary's true doubt rule fully comports with Congress's "expectation that the Secretary of Labor will promulgate standards which give the benefit of any doubt to the coal miner." S. Rep. No. 95–209, p. 13 (1977); see 43 Fed. Reg. 36826 (1978).

The court below did not deny the harmony of the true doubt rule with congressional policy in these cases, but it held instead that the use of the true doubt rule in BLBA

cases conflicts with 20 CFR § 718.403 (1993), a Department of Labor regulation providing that "[e]xcept as provided in this subchapter, the burden of proving a fact alleged in connection with any provision of this part shall rest with the party making such allegation." But the phrase "burden of proving," like its cognate, "burden of proof," is susceptible of two meanings, including the meaning given by the agency interpretation, as imposing only the burden of producing evidence. The Department of Labor is entitled to "substantial deference" in the interpretation of its own regulations, and the agency's interpretation need only be reasonable in light of the regulations' text and purpose, *Martin* v. *Occupational Safety and Health Review Comm'n*, 499 U. S. 144, 150–151 (1991); accord, *Bowles* v. *Seminole Rock & Sand Co.*, 325 U. S. 410, 414 (1945). The agency's interpretation of its regulation is surely reasonable here, given our own prior interpretation of "burden of proof" as referring only to production.

The Department of Labor's decision in the true doubt rule, to assign the burden of persuasion to the employer in cases involving harms to workers in the longshore and coal mining industries, is thus permissible and free from conflict with § 7(c) of the APA. I would sustain the Department's rule, and accordingly offer this respectful dissent.