UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

SEA ISLAND COMPREHENSIVE
HEALTHCARE CORPORATION, d/b/a
Hermina Traeye Memorial Nursing
Home,

*Petitioner,*

v.

U.S. DEPARTMENT OF HEALTH &
HUMAN SERVICES; TOMMY G.
THOMPSON, Secretary of Health and
Human Services; THOMAS A.
SCULLY, Administrator, Centers for
Medicaid & Medicaid Services,

*Respondents.*

No. 02-2076

On Petition for Review of an Order
of the Benefits Review Board.
(HHS-DAB-1810)

Argued: September 24, 2003

Decided: October 29, 2003

Before MICHAEL, MOTZ, and SHEDD, Circuit Judges.

Petition for review denied by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** William Rakestraw Cowden, PHILLIPS, LYTLE,
HITCHCOCK, BLAINE & HUBER, L.L.P., Buffalo, New York, for

Petitioner. Elizabeth Carlin Benton, Assistant Regional Counsel, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, Atlanta, Georgia, for Respondents. **ON BRIEF:** Robert D. McCallum, Jr., Assistant Attorney General, Alex M. Azar, II, General Counsel, Bruce R. Granger, Chief Counsel, Region IV, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, Atlanta, Georgia, for Respondents.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

Sea Island Comprehensive Health Care Corporation (Sea Island) petitions for review of the United States Department of Health and Human Services' (HHS) decision imposing civil money penalties (CMPs) for its nursing home's immediate jeopardy level violation of the Medicare and Medicaid participation requirements. Because we find no reason to set aside the CMPs, we deny the petition.

### I.

Sea Island ran the Hermina Traeye Memorial Nursing Home (Hermina), a long term care facility on John's Island, South Carolina, that was certified to receive Medicare and Medicaid funds. All such facilities are subject to annual state surveys to determine if they comply with the Medicare and Medicaid participation requirements. 42 U.S.C. § 1395i-3(g). The State of South Carolina conducted an annual survey of Hermina from April 19 to April 23, 1999. The surveyors discovered numerous violations of the participation requirements. Based on the surveyors' findings, HHS notified Hermina that the facility was out of compliance with the Medicare and Medicaid participation requirements at the immediate jeopardy level. HHS terminated Hermina's federal funding and imposed CMPs of $10,000 per

day from April 23, 1999, the date the survey was completed, up to but not including May 16, 1999, the effective date of the termination. The facility requested an administrative hearing.

An administrative law judge found that Hermina placed residents in immediate jeopardy by violating the infection control regulation, 42 C.F.R. § 483.65. Immediate jeopardy is the most serious violation category. 42 C.F.R. § 488.408. The ALJ relied on the following evidence: Hermina's failure to make any attempt to identify the source of one resident's infection and its general failure to keep track of the cause, status, or severity of residents' infections; the inadequate treatments administered to residents for infections; and the failure of staff to take adequate precautions to prevent the spread of infection. The ALJ upheld the termination of Hermina's participation in Medicare and Medicaid effective May 16, 1999. The ALJ reduced the CMPs to $3,050 per day for the twenty-three-day period of monetary penalties. The HHS Departmental Appeals Board affirmed the ALJ. Sea Island now petitions to us for review of the decision to impose the CMPs.

## II.

Sea Island attacks the agency's decision on four fronts. First, it argues that HHS violated its due process rights by not giving it fair notice of the requirements for infection control programs. The applicable regulation gives a facility notice that it "must establish an infection control program" that (1) "[i]nvestigates, controls, and prevents infections," (2) "[d]ecides what procedures, such as isolation, should be applied to an individual resident," and (3) "[m]aintains a record of incidents and corrective actions." 42 C.F.R. § 483.65. Sea Island argues specifically that it did not receive fair notice because the ALJ went beyond the regulation and held that its facility had a duty to conduct tests to determine the cause of residents' infections. The ALJ did not go that far. The ALJ simply held that Sea Island's Hermina facility had "a duty to make reasonable efforts" to determine the cause of residents' infections. The ALJ found that there was no evidence to show that Hermina had made such efforts. In sum, the ALJ did not err in requiring a reasonable effort to comply with the infection control regulation, and the regulation itself provides adequate notice.

Second, Sea Island argues that the imposition of sanctions based on the surveyors' assessment of the likelihood of future harm results in

arbitrary enforcement in violation of the Administrative Procedure Act and the Due Process Clause. *See* 42 C.F.R. § 488.301, 488.408. Sea Island has waived this claim because it failed to raise it before the agency. *Armco, Inc. v. Martin*, 277 F.3d 468, 476 (4th Cir. 2002); *see also Thetford Prop. IV Ltd. P'ship v. United States Dep't of Hous. & Urban Dev.*, 907 F.2d 445, 447-49 (4th Cir. 1990) (discussing the importance of exhausting administrative remedies even when the claim has a constitutional focus).

Third, Sea Island argues that the ALJ applied an incorrect definition of immediate jeopardy. The ALJ applied the regulatory definition of immediate jeopardy, that is, "a situation in which the provider's noncompliance with one or more requirements has caused, or is likely to cause, serious injury, harm, impairment, or death to a resident." 42 C.F.R. § 488.301. Citing *Morton v. Ruiz*, 415 U.S. 199, 235 (1974), Sea Island contends that HHS is bound by its own internal policy set out in its State Operations Manual § 3010, which (according to Sea Island) narrows the regulatory definition of immediate jeopardy. The manual requires a "crisis situation" before a facility may be terminated from participation in the Medicare and Medicaid programs. Even if the manual narrows the definition, the manual does not apply here. The manual applies only to termination; it does not apply to the imposition of CMPs. Accordingly, the ALJ did not err in using the regulatory definition of immediate jeopardy when he considered the CMPs.

Finally, Sea Island argues that HHS has adopted a proof scheme in CMP cases that improperly shifts the burden of proof to the targeted facility. HHS maintains that "once a certification of noncompliance is made [by the agency], remedies [such as CMPs] are authorized unless and until the certification of noncompliance is superceded by a finding that correction has been completed and compliance and eligibility [has been] restored." Respondent's Br. at 47. Under the Administrative Procedure Act the proponent of an order bears the burden of proof. 5 U.S.C. § 556(d); *Director, Office of Worker's Comp. Programs, DOL v. Greenwich Collieries*, 512 U.S. 267 (1994). Here, HHS argues that once it established noncompliance (immediate jeopardy) at the time the survey concluded on April 23, 1999, the burden of proof shifted to Hermina because it was the proponent of an order finding that the violations had been corrected. In turn, Sea Island

argues that HHS had the burden to prove that Hermina was out of compliance for the entire period (April 23 up to May 16, 1999) sanctions were imposed. We need not resolve this argument because there is substantial evidence to support the finding that Hermina was out of compliance the entire time CMPs were assessed. *See Fairfax Nursing Home, Inc. v. United States Dep't of Health and Human Services*, 300 F.3d 835, 840 n.4 (7th Cir. 2002) (declining to decide whether burden of proof shifted to facility after HHS made initial showing of immediate jeopardy because substantial evidence supported the conclusion that a state of immediate jeopardy prevailed the entire time CMPs were imposed). There was substantial evidence here to support the finding that Hermina was out of compliance at the immediate jeopardy level on April 23, 1999, the day the survey ended. The violations relating to infection control were so serious and extensive that it was clear that it was going to take Hermina some time to correct them. Indeed, the ALJ noted that Hermina's "plan of correction acknowledged that, in many instances, corrections were 'ongoing' as of" May 10, 1999. All of this evidence allows the fair inference that Hermina had not attained compliance by May 15, 1999, the last day CMPs were imposed.

For the foregoing reasons, we deny Sea Island's petition for review.

*PETITION FOR REVIEW DENIED*