

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-29-2003

# Jacee Elec Inc v. NLRB

Precedential or Non-Precedential: Non-Precedential

Docket 01-4109

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Jacee Elec Inc v. NLRB" (2003). *2003 Decisions.* Paper 852.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/852

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

————

NO. 01-4109

————

JACEE ELECTRIC, INC.,
                                  Petitioner

v.

NATIONAL LABOR RELATIONS BOARD,
                                  Respondent

————

On Petition for Review of
National Labor Relations Board Order
(4-CA-28979)

————

NO. 01-4490

————

NATIONAL LABOR RELATIONS BOARD,
                                  Petitioner

v.

JACEE ELECTRIC, INC.,
                                  Respondent

————

On Cross-Application for Enforcement
of an Order of the National Labor Relations Board
(4-CA-28979)

NO. 02-2164

NATIONAL LABOR RELATIONS BOARD,
Petitioner

v.

JACEE ELECTRIC, INC.,
Respondent

On Application for Enforcement
of an Order of the National Labor Relations Board
(4-CA-30879)

Submitted Under Third Circuit LAR 34.1(a)
January 27, 2003

Before: SLOVITER and RENDELL, Circuit Judges,
and DEBEVOISE, District Judge<sup>*</sup>

(Filed: January 29, 2003)

OPINION OF THE COURT

SLOVITER, Circuit Judge.

In these consolidated labor cases, Jacee Electric, Inc. petitions for review of a

decision of the National Labor Relations Board ("Board") that it engaged in unfair labor

---

    <sup>*</sup>    Hon. Dickinson R. Debevoise, Senior Judge, United States District Court for the
District of New Jersey, sitting by designation.

2

practices. The Board cross-applies for enforcement of its order, and applies for enforcement of a related order directing Jacee to bargain with the union. For the reasons that follow, we will deny review of the Board's decision and grant its enforcement applications.

## I.

## BACKGROUND

The Administrative Law Judge ("ALJ") made the following findings of fact. Jacee is an electric service contractor located in Pennsylvania whose president, John Corelli, manages the company from his home in Florida. Jacee employs two electricians, Bill Cowan and Justin Waid, who have worked for the company since 1996. It also employs a part-time billing clerk as well as Cowan's wife, who, among other tasks, maintains the office. Jacee regularly employs others to do electrical work, either as electricians or helpers. At times, Jacee operates without additional help and at other times, one or more electricians or helpers have worked for it for an extended period of time.

On January 25, 2000, Jacee hired Robert Hearon as a helper. It also hired Charles Vandenberg as a helper shortly thereafter. On February 15, 2000, a union organizer approached Hearon and Waid while they ate lunch. Both employees went to the union hall the next evening and signed authorization cards. On February 17, IBEW Local 269 (the "Union"), filed a representation petition. Corelli received a copy of the petition by fax at about 12:41 p.m.

On the same day at 11:15 a.m., Hearon and Waid completed electrical work they had

3

been assigned. They spoke to Corelli on the telephone who told them that there was no electrical work for them to do. He offered them the option of doing non-electrical work which they did. On February 18, Waid did non-electrical work and Jacee discharged Vandenberg. Corelli told Hearon that he had no work for him. Hearon called Corelli about the availability of work from Monday, February 21 through Thursday, February 24. The first three days, Corelli told Hearon that no work was available but that he should call back the next day. On February 24, Corelli told Hearon to stop calling him, to file for unemployment insurance and to look for another job.

Waid did electrical work the week of February 21, 2000. On February 22, he asked Corelli if he would have a helper to assist him and Corelli told him that he would not. Corelli asked Waid if any union representatives had been to any of the jobs he had worked on and Waid said no. Corelli told Waid that unions were no good for employees like him because they would make him start from the bottom again. On February 23, the Union sent Corelli a fax identifying Waid as a volunteer organizer. Corelli asked Waid if the letter was accurate. When Waid said that it was, Corelli asked him if he knew what would happen to his business if it went union. Corelli also asked Waid what it would take to get him to stop supporting the Union, offered him a raise and other benefits and told him to write down anything else that he wanted.

On February 25, 2000, Waid went on strike. Hearon joined him on the picket line. Jacee obtained an employee from a temporary labor agency to replace Waid. It hired no other employees.

4

The Board's General Counsel issued a complaint alleging that Jacee violated the National Labor Relations Act, 29 U.S.C. §§ 158(a)(1),(3) (the "Act"), by laying off Hearon, and by interrogating Waid about his union activities, promising him benefits if he withdrew his support for the Union, and threatening that it would close its business if employees chose the Union as their bargaining representative.

The Board also conducted a secret ballot election among Jacee's five employees, which resulted in one vote in favor and one vote against union representation. There were three challenged ballots and Jacee does not dispute that two of them should not be counted. The last ballot is Hearon's vote which Jacee argues should not be counted. Hearon's vote is determinative as to union representation.

Based upon his findings of fact, the ALJ concluded that union activity was a substantial factor in Jacee's decision to layoff Hearon. The ALJ explained that although there was no direct evidence that Jacee knew that Hearon supported the Union until February 25, the day of the strike, he could infer such knowledge from the totality of the circumstances, which included the timing of his layoff, Jacee's general knowledge of its employees' union activities gained from the representation petition and the letter identifying Waid as an organizer, Jacee's union animus and the pretextual nature of Jacee's explanation for the layoff.

In finding that Jacee's explanation for the layoff – insufficient work – was pretextual, the ALJ explained that he did not credit Corelli's testimony that he had laid off employees in the past. Rather, Jacee's practice was to employ helpers for an extended

5

period of time even when sales temporarily declined. In addition, Jacee generally needed more help in the winter. The ALJ also inferred discriminatory motive from Jacee's vacillating explanation for laying off Hearon. Jacee initially stated that it laid him off because of frequent absences but abandoned that explanation at the hearing.

Having concluded that Jacee laid off Hearon in violation of the Act, the ALJ found that Hearon was eligible to vote in the election. He issued a recommended order that Jacee cease and desist from engaging in the unfair labor practices, that it reinstate Hearon and make him whole for any loss of earnings and benefits and that the Regional Director prepare a revised tally of ballots related to the election.[1]

In a divided decision, the Board affirmed the ALJ's findings and conclusions and adopted the recommend order in a slightly modified form. The majority of the Board agreed that Jacee's explanation for Hearon's layoff was pretextual based upon the factors cited by the ALJ. The dissenting Board member concluded that Jacee established that it would have laid off Hearon even if he had not engaged in union activity based upon the facts that Corelli told Hearon that there was no work after February 17, that Jacee did not hire another employee after Hearon's departure and that Jacee sometimes operated without helpers.

The Board also directed the Regional Director to count Hearon's ballot in the

---

[1] The ALJ also concluded that Corelli's efforts to convince Waid not to support the Union constituted unfair labor practices. Jacee does not challenge this ruling on appeal and the court will grant enforcement of the Board's order with respect to these charges without further discussion.

election and serve a revised tally of ballots on the parties. Although the Union was certified as the exclusive collective bargaining representative of the employees, Jacee refused to bargain with the Union. The Board's General Counsel issued a complaint and the Board found that Jacee violated the Act and ordered it to bargain. The Board has filed an application to enforce this order to bargain which is before the court along with Jacee's petition for review of the Board's decision that it committed unfair labor practices with respect to Hearon, and the Board's cross-application for enforcement of that order.

## II.

## JURISDICTION AND STANDARD OF REVIEW

The Board had jurisdiction pursuant to 29 U.S.C. §160(a). This court has jurisdiction pursuant to 29 U.S.C. §§ 160(e),(f). This court must sustain the Board's findings of unfair labor practices if they are supported by substantial evidence on the record considered as a whole. Hunter Douglas, Inc. v. NLRB, 804 F.2d 808, 812 (3d Cir. 1986). Similar deference is granted to the Board's inferences from facts which, if supported by substantial evidence, may not be displaced even though the court acting de novo might have reached a different conclusion. Id. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Hedstrom Co. v. NLRB, 629 F.2d 305, 313 (1980) (en banc).

## III.

## DISCUSSION

### A. Unfair Labor Practices

7

Under Section 8(a)(3) of the National Labor Relations Act, it is an unfair labor practice for an employer "by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization[.]" 29 U.S.C. § 158(a)(3). The General Counsel has the burden of proving that an employee's protected conduct was a substantial or motivating factor for an employer's adverse action. NLRB v. Transp. Mgmt. Corp., 462 U.S. 393, 401 (1983). The Board may rely on circumstantial evidence to prove anti-union motivation. NLRB v. Scott Printing Corp., 612 F.2d 783, 787 (3d Cir. 1979). The employer may then establish as an affirmative defense that it would have taken the same action even if the employee had not been involved in union activity. See Transp. Mgmt. Corp., 462 U.S. at 401-02.[2]

Jacee argues that the Board's decision that Hearon's union activity was a substantial or motivating factor leading to his layoff is not supported by substantial evidence. It relies on the facts that Corelli was located in Florida and did not know about the union activity; Hearon worked only two days the week before he was laid off due to a lack of work; Corelli was unsophisticated regarding union-organized activity; and before February 23, 2000, the only employee Corelli could have suspected of such activity was Vandenberg, who wore a union cap insignia and had a sticker on his car.

The Board responds that it reasonably inferred that Jacee knew about Hearon's union

---

[2] The Supreme Court has rejected a footnote in Transp. Mgmt. Corp. unrelated to the issue before the court in this case. See Dir., Office of Workers' Comp. Programs v. Greenwich Collieries, 512 U.S. 267, 277 (1994).

activity and was unlawfully motivated based upon its general knowledge of its employees' union activities, Corelli's union animus evidenced by his comments to Waid, the small size of the workforce and the timing of Hearon's layoff. Corelli stopped assigning work to Hearon on February 18, the day after he received the representation petition, and terminated him on February 24, the day after he learned that Waid was a volunteer organizer. The Board submits that it is reasonable to infer that Corelli would suspect his newer employees were behind the new unionizing campaign given that he had a positive relationship with his long-term employees, Cowan and Waid.

The Board further contends that the fact that Corelli was based in Florida does not dictate a contrary result since he spoke to his employees daily and was aware of the union activity. It also argues that a sophisticated understanding of union activities was not necessary to suspect that Jacee's newest hires were more likely responsible for union organizing actions. We agree with the Board that Jacee's arguments do not undermine the Board's conclusion that Hearon's termination was motivated by his union activity.

Jacee also argues that even if the General Counsel sustained its burden of proof, the Board erred in deciding that Jacee did not show that Hearon's layoff resulted from a permissible motive – insufficient work. It contends that it introduced business records showing that helpers never worked long enough to qualify for benefits, and that the week before Hearon was discharged, he only worked two days. Jacee also disputes the Board's determination that the fact that Jacee advanced more than one reason for its decision to layoff Hearon supports that it had an improper motive.

9

The Board argues that insufficient work is a pretext and points to evidence that sales were up in February of 2000, and to Waid's testimony that he asked Corelli if a helper would assist him the week that Hearon was laid off. It also states that even if there was an economic slowdown, the size of Jacee's workforce remained steady in the past when sales figures fluctuated. The Board contends that Jacee's change in its stated reason for laying off Hearon supports a finding of pretext because the Board could infer that the real reason for the layoff was not among those asserted.

Jacee has not advanced persuasive arguments to the contrary. We hold that Jacee has not established that the Board's conclusion that Jacee did not show that it would have discharged Hearon in the absence of his union activity is not supported by substantial evidence.

## B. Ballot Challenge

Jacee and the Board agree that the decision regarding the validity of Hearon's ballot rests on the validity of his layoff. If Hearon was laid off for an improper reason, he is an employee for union organization purposes and his ballot should be counted. If he was laid off for a valid reason, his ballot should not be counted. Because Jacee has not shown that the Board erred in finding that it committed unfair labor practices, we further hold that the Board properly directed that Hearon's ballot be counted in the election.

## C. Refusal to Bargain

Jacee concedes that whether the court should enforce the Board's order that it bargain with the Union depends upon the resolution of the above issues. Based upon our

10

conclusions set forth above, we will grant the Board's application for enforcement of the order to bargain.

## IV.

## CONCLUSION

For the reasons set forth above, we will deny Jacee's petition for review and we will grant the Board's applications for enforcement of its orders.

———————————————

TO THE CLERK:

Please file the foregoing opinion.

/s/ Dolores K. Sloviter
Circuit Judge